UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

RONNI DYNKIN and
GAIL GRAUMAN

               **Plaintiffs,**

    - against -

BEN-ZION ALCALAY
AHARON ALCALAY A/K/A RONNY ALCALAY,
DAVID ALCALAY,
OLYMPIC PROPERTY MANAGEMENT LLC,
SILVER BEARS MANAGEMENT LLC,
SILVER BEARS REAL ESTATE LLC, and
BENHAD MANAGER INC.

               **Defendants.**
------------------------------------------------------------x

**Docket No: 22 CV 5004**

# COMPLAINT
# AND JURY DEMAND

Plaintiffs by their attorneys, ROSEN LAW LLC for its amended complaint in this action, alleges as follows:

## JURISDICTION AND VENUE

1. The United States District Court for the Eastern District of New York has additional jurisdiction over the parties, pursuant to Title 28 of the United States Code §1332(a)(1) as the Plaintiffs and Defendants are citizens of different states and supplemental jurisdiction pursuant to Title 28 of the United States Code §1167, which provides the District Court with jurisdiction based on diversity of citizenship.

2. Additionally, the United States District Court for the Eastern District of New York also has jurisdiction over Plaintiffs' claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO") statute pursuant to 18 U.S.C. § 1962, 18 U.S.C. § 1964(a) and 28 U.S.C. § 1331 over remaining claims pursuant to 28 U.S.C. §§ 1367(a).

1

3.      The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.      The United States District Court for the Eastern District of New York has venue pursuant to Title 29 of the United States Code §1391(b)(2), as a substantial part of the events or omissions giving rise to the claims set forth in this complaint occurred within in the Eastern District of New York.

5.      Plaintiff demands a jury trial.

<u>**EVENTS**</u>

6.      Defendant Ben-Zion Alcalay served, and continues to serve, as the manager of both Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., and the President of Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C.

7.      This lawsuit is brought for a pattern of fraud and wrongdoing perpetrated by Defendant Ben-Zion Alcalay, his web of shell companies, and his co-conspirators, regarding the management and operations of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C.

8.      The wrongful acts, including breach of contract and breach of fiduciary duty occurred in the Eastern District of New York regarding real property located in Queens Co.

9.      As a result of the wrongful acts as set forth in this complaint, Plaintiffs no longer own real property which was in the Plaintiffs' family for approximately 80 years, and Plaintiffs failed to receive agreed to compensation for the sale of the subject real property.

**The Parties**

10.     Plaintiff RONNI DYNKIN is an individual residing at 130 Cooper Drive, Great Neck, County of Nassau, State of New York and is a citizen and resident of the State of New York.

11.     Plaintiff GAIL GRAUMAN is an individual residing at 1 Overlook Drive, Great Neck, County of Nassau, State of New York and is a citizen and resident of the State of New York.

12.     Upon information and belief, Defendant BEN-ZION ALCALAY is an individual residing in Palm Beach County, the State of Florida and is a citizen and resident of the State of Florida.

13.     Upon information and belief, Defendant AHARON ALCALAY A/K/A RONNY ALCALAY is an individual residing in Palm Beach County, the State of Florida and is a citizen and resident of the State of Florida.

14.     Upon information and belief, Defendant DAVID ALCALAY is an individual residing in Palm Beach County, the State of Florida and is a citizen and resident of the State of Florida.

15.     Defendant OLYMPIC PROPERTY MANAGEMENT LLC is a limited liability company organized in the State of Georgia.

16.     Upon information and belief, none of the members of Defendant OLYMPIC PROPERTY MANAGEMENT LLC are citizens or residents of the State of New York. Upon information and belief, the members of Defendant OLYMPIC PROPERTY MANAGEMENT LLC are citizens and residents of the State of Florida.

17.    Defendant SILVER BEARS MANAGEMENT LLC is a limited liability company organized in the State of Florida.

18.    Upon information and belief, none of the members of Defendant SILVER BEARS MANAGEMENT LLC are citizens or residents of the State of New York. Upon information and belief, the members of Defendant SILVER BEARS MANAGEMENT LLC are citizens and residents of the State of Florida.

19.    Defendant SILVER BEARS REAL ESTATE LLC is a limited liability company organized in the State of Florida.

20.    Upon information and belief, none of the members of Defendant SILVER BEARS REAL ESTATE LLC are citizens or residents of the State of New York. Upon information and belief, the members of Defendant SILVER BEARS REAL ESTATE LLC are citizens and residents of the State of Florida.

21.    Defendant Benhad Manager Inc. is a corporation organized in the State of Delaware, with its principal place of business located in the State of Florida.

22.    Defendant BEN-ZION ALCALAY is the Manager of Defendant SILVER BEARS MANAGEMENT LLC.

23.    Defendant BEN-ZION ALCALAY is the Manager of Defendant SILVER BEARS REAL ESTATE LLC.

24.    Defendant AHARON ALCALAY is the Manager of Defendant OLYMPIC PROPERTY MANAGEMENT LLC.

25.    Plaintiff Ronni Dynkin and Plaintiff Gail Grauman are sisters.

26.    Plaintiffs Ronni Dynkin and Gail Grauman are the sisters of Carol Alcalay, the estranged wife of Defendant Ben-Zion Alcalay.

4

27.    Defendants Ben-Zion Alcalay, Aharon Alcalay, and David Alcalay, are brothers.

## NATURE OF THE CASE
## AND FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS
## PATTERN OF FRAUDS AND RACKETEERING ACTIVITY
## OF DEFENDANTS

28.    This action includes frauds and pattern of racketeering activity perpetrated by Defendants.

29.    As set forth herein, this action is brought in this court based on (i) diversity jurisdiction and (ii) federal question jurisdiction (18 U.S.C. § 1962, et. seq.).

30.    Plaintiffs were defrauded by Defendants' racketeering enterprise and scheme.

31.    This is an action for (a) violation of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"); (b) for an accounting of the assets of Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C., (c) breach of fiduciary duty; (d) aiding and abetting breach of fiduciary duty; (e) fraudulent inducement; (f) rescission; (g) breach of contract; (h) conversion; (i) constructive trusts; (j) piercing of corporate veil of Benhad Manager Inc.; (j) fraud; (l) unjust enrichment; (m) conspiracy to commit fraud; (n) appointment of a receiver of Benhad Manager Inc.; and (o) relief under the Civil Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1961, et.seq.).

32.    Plaintiff brings this action against defendants for compensatory and punitive damages arising from Defendants' scheme to defraud Plaintiffs, including Defendants operation of a racketeering enterprise.

**Factual Background**

33.     In the 1940's Dr. Benjamin Futernick opened a medical practice at 61-54 Springfield Blvd, Flushing, County of Queens, City and State of New York (the "Queens Property") after receiving the building and property as a gift from his father.

34.     The Queens Property is also described as the real property located at Block 7610, Lots 35, 40 and 52 on the Tax Map of the City of New York for the County of Queens.

35.     Over the years, Benjamin and Hadassah had four daughters: Gail (married name of Gail Grauman), Ronni (married name of Ronni Dynkin), Carol (married name of Carol Alcalay), the estranged wife of Defendant Ben-Zion Alcalay, and Janice (married name of Janice Raitzin).

36.     After the Plaintiffs' sister, non-party Carol Alcalay, married Defendant Ben-Zion Alcalay, in approximately 1986, Defendant Ben-Zion Alcalay, an immigrant from Israel, began to get involved in the operations of the Queens Property.

37.     Defendant Ben-Zion Alcalay caused the entities owned by Plaintiffs and non-parties Carol Alcalay, the estranged wife of Defendant Ben-Zion Alcalay and Janice Raitzin (Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C.) to take out mortgage loans on several occasions. The funds from those mortgage loans while portions were distributed to Plaintiffs, non-party Carol Alcalay, the estranged wife of Defendant Ben-Zion Alcalay and non-party Janice Raitzin, Defendant Ben-Zion Alcalay refused to provide an accounting to the Plaintiffs for the bulk of the mortgage loan funds.

38.     Defendant Ben-Zion Alcalay also refused to provide an accounting to the Plaintiffs for the sale proceeds from the sale of the Queens Property.

39.     Non-parties Carol Alcalay, the estranged wife of Defendant Ben-Zion Alcalay and Janice Raitzin are hereafter referred to as the "Non-Party Members".

40.     For years, Defendant Ben-Zion Alcalay tried to convince Dr. Benjamin Futernick to be more aggressive with the ownership of the Queens Property, expand it, and add tenants.

41.     In the late 1980's, Dr. Futernick relented, permitting Defendant Ben-Zion Alcalay to begin work with regard to the Queens Property, which in his first attempt failed miserably, costing Dr. Futernick hundreds of thousands of dollars.

42.     Dr. Futernick made it explicitly known to Defendant Ben-Zion Alcalay that it was his intention that Dr. Futernick's his four daughters hold the Queens Property, divided into equal shares of 25% each, for as long as they owned the Queens Property.

43.     Ultimately, Defendant Ben-Zion Alcalay was able to rectify these issues, and the Queens Property was able to complete the expansion, at significant financial costs to Dr. Futernick, and Dr. Futernick began renting to several tenants.

44.     Dr. Benjamin Futernick died in 1991.

45.     Hadassah Futernick died in 2008.

46.     After making the improvements to the Queens Property, in 1997, Defendant Ben-Zion Alcalay, as a part of Hadassah Futernick's estate planning, caused the transfer of the ownership of the Queens Property to Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C., and took, violating the promise and agreement he had made with Dr. Futernick, who had passed away years earlier, on his own initiative, a five percent (5%) ownership interest in Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C. for allegedly "helping" his mother-in-law, his wife non-party Carol Alcalay, the estranged wife of Defendant Ben-Zion Alcalay, his

sister-in-law non-party Janice Raitzin, and Plaintiff Ronni Dynkin and Plaintiff Gail Grauman to "manage" the Queens Property.

47.     The name Jacaroga, L.L.C. was formed from the names of the Plaintiffs and their sisters, non-party Janice Raitzin and non-party Carol Alcalay, the estranged wife of Defendant Ben-Zion Alcalay. The "JA" in Jacaroga stands for "Janice"; The "CA" in Jacaroga stands for "Carol"; The "RO" in Jacaroga stands for "Ronni"; and The "GA" in Jacaroga stands for "Gail".

## HISTORY OF THE OWNERSHIP OF THE QUEENS PROPERTY

48.     The historical ownership of the Queens Property is as follows:

A.     October 19, 1978 – Dr. Benjamin Futernick transfers the real property at Block 7610, Lot 52 to his daughters, (i) Ronni Futernick n/k/a Ronni Dynkin, (ii) Carol Futernick n/k/a Carol Alcalay, (iii) Janice Futernick n/k/a Janice Raitzin, and (iv) Gail Grauman f/k/a Gail Futernick pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 1109, Page 222;

B.     October 19, 1978 – Dr. Benjamin Futernick transfers the real property at Block 7610, Lots 35 & 40 to his daughters, (i) Ronni Futernick n/k/a Ronni Dynkin, (ii) Carol Futernick n/k/a Carol Alcalay, (iii) Janice Futernick n/k/a Janice Raitzin, and (iv) Gail Grauman f/k/a Gail Futernick pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 1109, Page 224;

C.     July 14, 1985- (i) Ronni Futernick n/k/a Ronni Dynkin, (ii) Carol Futernick n/k/a Carol Alcalay, (iii) Janice Futernick n/k/a Janice Raitzin, and (iv) Gail Grauman f/k/a Gail Futernick, transfer real property at Block 7610, Lots 35 & 40 to (i) Carol Futernick n/k/a Carol Alcalay and (ii) Janice Futernick n/k/a Janice Raitzin pursuant to a deed recorded in the

Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 1896, Page 554;

D.      July 14, 1985- (i) Ronni Futernick n/k/a Ronni Dynkin, (ii) Carol Futernick n/k/a Carol Alcalay, (iii) Janice Futernick n/k/a Janice Raitzin, and (iv) Gail Grauman f/k/a Gail Futernick, transfer real property at Block 7610, Lot 52 to (i) Carol Futernick n/k/a Carol Alcalay and (ii) Janice Futernick n/k/a Janice Raitzin pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 1896, Page 556;

E.      November 4, 1987 - (i) Carol Futernick n/k/a Carol Alcalay and (ii) Janice Futernick n/k/a Janice Raitzin transfer real property at Block 7610, Lots 35 & 40 to Benef Realty Corp. (upon information and belief, owned by Dr. Benjamin Futernick) pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 2510, Page 1338;

F.      November 4, 1987 - (i) Carol Futernick n/k/a Carol Alcalay and (ii) Janice Futernick n/k/a Janice Raitzin transfer real property at Block 7610, Lot 52 to Benef Realty Corp. (upon information and belief, owned by Dr. Benjamin Futernick) pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 2510, Page 1340;

G.      April 1, 1988 - Benef Realty Corp. transfers the real property at Block 7610, Lot 52 to (i) Carol Futernick n/k/a Carol Alcalay and (ii) Janice Futernick n/k/a Janice Raitzin pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 2591, Page 1899;

H.      April 1, 1988 - Benef Realty Corp. transfers the real property at Block 7610, Lots 35 & 40 to (i) Carol Futernick n/k/a Carol Alcalay and (ii) Janice Futernick n/k/a Janice Raitzin pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 2591, Page 1901;

I.      December 16, 1988 - (i) Carol Futernick n/k/a Carol Alcalay and (ii) Janice Futernick n/k/a Janice Raitzin transfers the real property at Block 7610, Lots 35 to Dr. Benjamin Futernick pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 2739, Page 2281;

J.      December 16, 1988 - (i) Carol Futernick n/k/a Carol Alcalay and (ii) Janice Futernick n/k/a Janice Raitzin transfers the real property at Block 7610, Lot 52 to Dr. Benjamin Futernick pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 2739, Page 2283;

K.      December 16, 1988 - (i) Carol Futernick n/k/a Carol Alcalay and (ii) Janice Futernick n/k/a Janice Raitzin transfers the real property at Block 7610, Lots 40 to Dr. Benjamin Futernick pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 2739, Page 2283;

L.      On May 3, 1991, Dr. Benjamin Futernick transfers the real property at Block 7610, part of Lot 40 to (i) Carol Futernick n/k/a Carol Alcalay and (ii) Janice Futernick n/k/a Janice Raitzin pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 3151, Page 1502;

M.      On August 22, 1997, after the death of Dr. Benjamin Futernick, the Estate of Dr. Benjamin Futernick transfers the real property at Block 7610, Lot 40 (formerly Lots 40

and 52) to Jacaroga, L.L.C. pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 4685, Page 1953;

N.      On August 22, 1997, after the death of Dr. Benjamin Futernick, the Estate of Dr. Benjamin Futernick transfers the real property at Block 7610, Lots 35 to Benhad, L.L.C. pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 4685, Page 1957; and

O.      On September 18, 1999, Benhad, L.L.C. transfers the real property at Block 7610, Lot 52 to Hadasi, L.L.C. pursuant to a deed recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 4685, Page 1957.

### SALE OF THE QUEENS PROPERTY IN 2019 FOR $20,000,000

A.      On June 7, 2019, Benhad, L.L.C. sold the real property located at Block 7610, Lot 35 to Jackson 13-Lee 74 LLC, a New York limited liability company unrelated to the Plaintiffs and the Futernick Family for the sale price of $4,195,661 pursuant to a deed recorded in the Office of the New York City Register on June 20, 2019 in CRFN No. 2019000195328. The aforesaid deed was executed by Defendant Ben-Zion Alcalay, the President of Defendant Benhad Manager Inc., the Manager of Benhad, L.L.C.

B.      On June 7, 2019, Jacaroga, L.L.C. sold the real property located at Block 7610, Lot 40 to Jackson 13-Lee 74 LLC, a New York limited liability company unrelated to the Plaintiffs and the Futernick Family for the sale price of $14,657,199 pursuant to a deed recorded in the Office of the New York City Register on June 20, 2019 in CRFN No. 2019000195330. The aforesaid deed was executed by Defendant Ben-Zion Alcalay, the President of Defendant Benhad Manager Inc., the Manager of Jacaroga, L.L.C.

C.      On June 7, 2019, Hadasi, L.L.C. sold the real property located at Block 7610, Lot 52 to Jackson 13-Lee 74 LLC, a New York limited liability company unrelated to the Plaintiffs and the Futernick Family for the sale price of $1,147,140 pursuant to a deed recorded in the Office of the New York City Register on June 20, 2019 in CRFN No. 2019000195329. The aforesaid deed was executed by Defendant Ben-Zion Alcalay, the President of Defendant Benhad Manager Inc., the Manager of Hadasi, L.L.C.

49.      The total sales price for the sale of the Queens Property on June 7, 2019 to Jackson 13-Lee 74 LLC, consisting of the real property located at Block 7610, Lots 35, 40 and 52 was $20,000,000 ($4,195,661 for Lot 40, $14,657,199 for Lot 40, and $1,147,140 for Lot 52).

50.      Defendants failed to account to Plaintiffs for the $20,000,000 that was the sale price for the Queens Property.

51.      On or about June 7, 2019, Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. paid $150,000.00 to "KOG ENTERPRISES" with funds of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C. from the proceeds from the sale of the Queens Property, without disclosing to Plaintiffs, or obtaining Plaintiffs' consent to pay $150,000.00 to "KOG ENTERPRISES from the proceeds from the sale of the Queens Property.

52.      On or about June 7, 2019, Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. paid a "loan swap break fee" with funds of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C. in the amount of approximately $364,800 because Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. failed to wait until the mortgage had no breakup fee, prepayment penalty or swap fee before selling the Queens Property.

53.     On or about June 7, 2019, Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. paid a real estate brokerage commission to "Schuckman Realty" with funds of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C. in the amount of approximately $280,000 without disclosing same to Plaintiffs, and without Plaintiffs' consent.

54.     On or about June 7, 2019, Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. paid a real estate brokerage commission to "Highcap Group" with funds of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C. in the amount of approximately $280,000 without disclosing same to Plaintiffs, and without Plaintiffs' consent.

55.     Upon information and belief, a portion of the $280,000 commission paid to either Schuckman Realty or Highcap Group was paid indirectly to Defendant Ben-Zion Alcalay or his sons.

56.     On or about June 7, 2019, Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. paid a real estate brokerage commission to "Promise Northern Realty" with funds of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C. in the amount of approximately $60,000 without disclosing same to Plaintiffs, and without Plaintiffs' consent.

57.     Upon information and belief, on or about June 7, 2019, Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. paid funds of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C. to Investment Property Exchange Services, Inc. in the amount of approximately $5,802,693.68 without following the required procedures for a tax free exchange under the Internal Revenue Code.

58.     At all relevant times, Defendant Ben-Zion Alcalay was the President of Defendant Benhad Manager Inc., the manager of (i) Jacaroga, L.L.C., (ii) Hadasi, L.L.C., and (iii) Benhad, L.L.C.

59.     After the sale of the Queens Property for $20,000,000, Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. failed to provide an accounting of the disbursement of the $20,000,000 that was allegedly paid to (i) Jacaroga, L.L.C., (ii) Hadasi, L.L.C., and (iii) Benhad  L.L.C. for the sale of the Queens Property.

60.     For decades, Dr. Benjamin Futernick operated his medical practice at the Queens Property, serving the community, in both peace time and war time, where, during the Korean War, he served as an Officer and Doctor in the Navy, while returning to his office each weekend.

61.     Dr. Benjamin Futernick owned the Queens Property with his wife, Hadassah Futernick and wanted his four (4) daughters to own the Queens Property and benefit from the ownership of the Queens Property.

62.     After Defendant Ben-Zion Alcalay became involved in "managing" the Queens Property and/or after Defendant Benhad Manager Inc. began to act as "Manager" for (i) Jacaroga, L.L.C., (ii) Hadasi, L.L.C., and (iii) Benhad, L.L.C., and (i) Ronni Futernick n/k/a Ronni Dynkin, (ii) Carol Futernick n/k/a Carol Alcalay, (iii) Janice Futernick n/k/a Janice Raitzin, and (iv) Gail Grauman f/k/a Gail Futernick, who were the owners of (i) Jacaroga, L.L.C., (ii) Hadasi, L.L.C., and (iii) Benhad, L.L.C.,  Defendant Ben-Zion Alcalay caused the following mortgages to be taken on the Queens Property:

A.      A mortgage taken against the Queens Property on May 3, 1991 from Gateway State Bank in the amount of $1,500,000 pursuant to a mortgage recorded in the Office of the

New York City Register and/or the Office of the Queens County Clerk in Reel 3151, Page 1504;

B.      A mortgage taken against the Queens Property on December 21, 1992 from Flushing Savings Bank in the amount of $2,000,000 pursuant to a mortgage recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 3473, Page 1855;

C.      A mortgage taken against the Queens Property on October 1, 1999 from First Credit Wexford Inc. in the amount of $3,200,000 pursuant to a mortgage recorded in the Office of the New York City Register and/or the Office of the Queens County Clerk in Reel 5391, Page 265 and 325;

D.      A mortgage taken against the Queens Property on May 16, 2007 from UBS Real Estate Securities Inc. in the amount of $12,500,000 pursuant to a mortgage recorded in the Office of the New York City Register on August 20, 2007 in CRFN No. 200700049602; and

E.      A mortgage taken against the Queens Property on March 30, 2017 from T.D. BANK, N.A. in the amount of $13,000,000 pursuant to a mortgage recorded in the Office of the New York City Register on April 7, 2017 in CRFN No. 2017000136220.

63.      Although duly demanded by Plaintiffs to Defendant Ben-Zion Alcalay and to Defendant Benhad Manager Inc., Plaintiffs to Defendant Ben-Zion Alcalay and to Defendant Benhad Manager Inc. have refused to provide the Plaintiffs with any accounting of the disbursement of the four mortgage loans that Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. caused to be obtained by (i) Jacaroga, L.L.C., (ii) Hadasi, L.L.C., and (iii) Benhad, L.L.C. against the Queens Property.

64.     Although duly demanded by Plaintiffs to Defendant Ben-Zion Alcalay and to Defendant Benhad Manager Inc., Plaintiffs to Defendant Ben-Zion Alcalay and to Defendant Benhad Manager Inc. have refused to provide the Plaintiffs with any accounting of the proceeds from the sale of the Queens Property by (i) Jacaroga, L.L.C., (ii) Hadasi, L.L.C., and (iii) Benhad, L.L.C. to non-party Jackson 13-Lee 74 LLC.

65.     At the time that (i) Jacaroga, L.L.C., (ii) Hadasi, L.L.C., and (iii) Benhad, L.L.C. obtained mortgage loans, Defendant Ben-Zion Alcalay refused to permit Plaintiffs or the Non-Party Members from attending the real estate closings; Defendant Ben-Zion Alcalay stated to Plaintiffs that the Members of Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. were not permitted to attend the closing. At the same time, Defendant Ben-Zion Alcalay concealed that Defendant David Alcalay was present at the closing and that Defendant David Alcalay received compensation at or after the closing from funds of Jacaroga, L.L.C., Hadasi, L.L.C. and/or Benhad, L.L.C. Defendant David Alcalay was never a member of Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. and upon information and belief, Defendant David Alcalay was paid monies from a refinancing of a loan obtained by Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., although, upon information and belief, Defendant David Alcalay is not and was not a licensed real estate broker or licensed mortgage broker in the State of New York, and any payments from Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. to Defendant David Alcalay were never authorized by Plaintiffs. Plaintiffs did not discover the payment or payments from Jacaroga, L.L.C., Hadasi, L.L.C. and/or Benhad, L.L.C. funds to Defendant David Alcalay until over a year later.

66.     Upon information and belief, between January 1, 2007 and the present date, Defendant Ben-Zion Alcalay transferred funds totaling approximately $125,000 obtained by

Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., from a refinancing of the Queens Property, without explanation to Plaintiffs, wrongfully and without any authorization transferred such funds to Defendant David Alcalay, allegedly for "services rendered".

67.     During the period when Defendant Ben-Zion Alcalay was managing the bank accounts of Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., he intimidated the Plaintiffs as well as the Non-Party Members, because Defendant Ben-Zion Alcalay threatened Plaintiffs that if they made any accusations or persisted in asking questions that Defendant Ben-Zion Alcalay did not want to answer, as the managing person for Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. would cease making any payments to Plaintiffs from the funds of Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C.

68.     The threat made by Defendant Ben-Zion Alcalay to cease making payments from Jacaroga, L.L.C., Hadasi, L.L.C. and/or Benhad, L.L.C. to Plaintiff Ronni Dynkin was real, because in actuality, Defendant Ben-Zion Alcalay did in fact cease making payments to Plaintiff Ronni Dynkin from Jacaroga, L.L.C. to punish Plaintiff Ronni Dynkin for her, inter alia, questioning the conduct of Defendant Ben-Zion Alcalay.

69.     Defendant Ben-Zion Alcalay engaged in a pattern of malicious and unethical dealings with the assets of Jacaroga, L.L.C., using, with devastating effect, the leverage that Defendant Ben-Zion Alcalay held over Plaintiffs, as well as Non-Party Plaintiffs.

70.     Between approximately 1999and the present date, Defendant Ben-Zion Alcalay began pursuing various real estate opportunities, building a portfolio of real properties across the nation, and upon information and belief, misrepresented to third parties, including banks and lenders, Defendant Ben-Zion Alcalay's ownership interest in the Queens

Property to help pursue those opportunities, falsely claiming that he owned 100% of the Queens Property.

71.     In or about 2018, Defendant Ben-Zion Alcalay began pressuring Plaintiffs, as well as Non-Party Plaintiffs, to sell the Queens Property, he coerced Plaintiff Ronni Dynkin as well as Non-Party Plaintiffs, the estranged wife of Defendant Ben-Zion Alcalay, to take the monies derived from the sale of the Queens Property to reinvest the funds into a different real property that Defendant Ben-Zion Alcalay desired to purchase in the State of Ohio.

72.     Upon information and belief, the only reason that Defendant Ben-Zion Alcalay, in effect, forced the sale of the Queens Property, which had been in the Futernick family for nearly 80 years, was so that Defendant Ben-Zion Alcalay could have the funds to purchase a shopping center in Ohio which Defendant Ben-Zion Alcalay desired to own.

73.     There was no legitimate basis for having to sell the Queens Property, other than because Defendant Ben-Zion Alcalay desired to purchase the shopping center known as the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

74.     Had Defendant Ben-Zion Alcalay not continuously mortgaged the Queens Plaza between approximately 2007 and approximately 2019, and overleveraging the Queens Property, the Queens Property could have remained in the ownership of Plaintiffs and Non-Party Plaintiffs, and their children for years to come.

75.     Defendant Ben-Zion Alcalay had his own personal interests and the interests of his brothers Defendant Aharon Alcalay and Defendant David Alcalay, ahead of the interests of Plaintiffs and Non-Party Plaintiffs, the estranged wife of Defendant Ben-Zion Alcalay.

76.     Defendant Ben-Zion Alcalay desired to sell the Queens Property to benefit himself and his brothers Defendant Aharon Alcalay and Defendant David Alcalay to the detriment of Plaintiffs and Non-Party Plaintiffs.

77.     Defendant Ben-Zion Alcalay concealed material information from Plaintiffs and Non-Party Plaintiffs, during the process of selling the Queens Property.

78.     Defendant Ben-Zion Alcalay concealed the identity of real estate brokers from Plaintiffs and Non-Party Plaintiffs, during the process of selling the Queens Property.

79.     During the process of managing and selling the Queens Property, Defendant Ben-Zion Alcalay treated Plaintiffs and Non-Party Plaintiffs, as if Plaintiffs and Non-Party Plaintiffs, were not the owners of the Queens Property, when in fact Plaintiffs and Non-Party Plaintiffs, were the owners of the entities that owned the Queens Property.

80.     Upon information and belief, because Defendant Ben-Zion Alcalay was desirous to sell the Queens Property to benefit himself, and so that he had cash to purchase another real property, he failed to obtain the highest possible price for the sale of the Queens Property to the detriment of the Plaintiffs.

81.     On many occasions during the time that Defendant Ben-Zion Alcalay managed the Queens Property and Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., Plaintiffs asked Defendant Ben-Zion Alcalay to inspect the books and records of Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., and Defendant Ben-Zion Alcalay refused to permit the Plaintiffs to inspect the books and records of Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C.

82.     At all relevant times, Defendant Ben-Zion Alcalay told Plaintiffs that if they continued to ask to inspect the books and records of Jacaroga, L.L.C., Hadasi, L.L.C. and

Benhad, L.L.C., Defendant Ben-Zion Alcalay would cut them off from receiving any monies from Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. as punishment for questioning Defendant Ben-Zion Alcalay.

83.    Defendant Ben-Zion Alcalay consciously and knowingly refused to permit the Plaintiffs from having knowledge about the entities that they owned, including but not limited to the financial condition of Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., and the income and expenses of Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., as well as payments made to Defendant Ben-Zion Alcalay and his affiliates without the consent of Plaintiffs.

84.    At numerous times between 2013 and the present date, Defendant Ben-Zion Alcalay threatened Plaintiffs that if they did not allow him full authority to manage Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., he would make sure that Plaintiffs received no monies at all from Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C.

85.    Defendant Ben-Zion Alcalay demanded unconscionable payments and monies from Jacaroga, L.L.C., Hadasi, L.L.C. and/or Benhad, L.L.C. based on the threat to Plaintiffs that Defendant Ben-Zion Alcalay would make sure that Plaintiffs received no monies at all from Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C.

86.    Defendant Ben-Zion Alcalay made a promise and representation to Plaintiff Ronni Dynkin that if Plaintiff Ronni Dynkin would "roll-over" her funds from Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. into the Waynetowne Plaza Shopping Center in Huber Heights, Ohio, he would guaranty that Plaintiff Ronni Dynkin would receive no less than $5,000 per month from Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. (the

"$5,000 Monthly Payments") for as long as she held an interest in Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C.

87.     The $5,000 Monthly Payments ceased in February 2022.

88.     Defendant Ben-Zion Alcalay required that Plaintiff Ronni Dynkin agree to an agreement wherein Defendant Ben-Zion Alcalay or his affiliates could purchase any interests that Plaintiff Ronni Dynkin had in Jacaroga, L.L.C. for the sum of $1,400,000, which was well below market value of Plaintiff Ronni Dynkin's ownership interests in Jacaroga, L.L.C. (the "Buyout").

89.     The Buyout was a mechanism by Defendant Ben-Zion Alcalay to have Defendant Ben-Zion Alcalay and his brothers take complete control and ownership of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

90.     Upon information and belief, in causing the sale of the Queens Property and attempting to utilize Section 1031 of the Internal Revenue Code, Defendant Ben-Zion Alcalay violated Section 1031 of the Internal Revenue Code by failing to follow the legal requirements for a tax free exchange under Section 1031 of the Internal Revenue Code, damaging Plaintiff Ronni Dynkin, and Non-Party Plaintiffs.

91.     The sale of the Queens Property was a scheme for Defendant Ben-Zion Alcalay and his co-conspirators to obtain free downpayment monies from Jacaroga, L.L.C. so that Defendant Ben-Zion Alcalay and his co-conspirators could ultimately gain full ownership of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

92.     When the Queens Property was sold, Defendant Ben-Zion Alcalay prevented and advise Plaintiffs that they could NOT attend the closing of the sale of the Queens Property, even though the Plaintiffs advised Defendant Ben-Zion Alcalay that they wanted to

attend the closing. Defendant Ben-Zion Alcalay would not permit Plaintiffs to attend the closing, keeping the Plaintiffs in the dark as to who was paid what monies from the closings on the sale of the Queens Property.

93.     Upon information and belief, Defendant Ben-Zion Alcalay diverted some of the proceeds from the sale of the Queens Property to his children and/or his brothers.

94.     Upon information and belief, Defendant Ben-Zion Alcalay took unauthorized management fees from the proceeds from the sale of the Queens Property.

95.     On or about August 19, 2019, Defendant Ben-Zion Alcalay caused Jacaroga, L.L.C. to purchase the 22.5% membership interests that Plaintiff Gail Grauman held in Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. for the sum of $1,305,000, plus 22.5% of the cash that Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. had in the bank.

96.     Jacaroga, L.L.C. paid the $1,305,000 to Plaintiff Gail Grauman.

97.     Defendant Ben-Zion Alcalay individually and in his capacity as President of Defendant Benhad Manager Inc. never paid 22.5% of the cash that Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. had in the bank to Plaintiff Gail Grauman.

98.     Defendant Ben-Zion Alcalay defrauded Plaintiff Gail Grauman.

99.     When Jacaroga, L.L.C. acquired Plaintiff Gail Grauman's 22.5% membership interests in Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., Plaintiff Ronni Dynkin as well as Non-Party Plaintiffs' membership interests in Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. should have increased to 29.0323% membership interests, as the 22.5% membership interests in Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. were repurchased by membership interests in Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C.

100.    Defendant Ben-Zion Alcalay individually and in his capacity as President of Defendant Benhad Manager Inc. failed to increase Plaintiff Ronni Dynkin and Non-Party Plaintiffs' membership interests in Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C. to 29.0323% membership interests.

101.    Defendant Ben-Zion Alcalay has failed to account to Plaintiff Ronni Dynkin as well as Non-Party Plaintiffs for the fact that although Jacaroga, L.L.C. acquired Plaintiff Gail Grauman's 22.5% membership interests in Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., according to the income tax returns for Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., Plaintiff Ronni Dynkin as well as Non-Party Plaintiffs still only hold 22.5% membership interests each in Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C.

102.    Plaintiff Gail Grauman's membership interests in Jacaroga, L.L.C., Hadasi, L.L.C. and Benhad, L.L.C., are not owned by Defendant Ben-Zion Alcalay or his brothers, but were repurchased by Jacaroga, L.L.C., and therefore Plaintiff Gail Grauman's interests should have been divided, pro rata, among the members of Jacaroga, L.L.C. which include Plaintiff Ronni Dynkin as well as Non-Party Plaintiffs.

103.    Defendant Ben-Zion Alcalay breached his promise to pay Plaintiff Ronni Dynkin a payment of at least $5,000 per month every month from the funds of Jacaroga, L.L.C. after the acquisition of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

104.    While Defendant Ben-Zion Alcalay breached his promise to pay Plaintiff Ronni Dynkin a payment of at least $5,000 per month every month from the funds of Jacaroga, L.L.C. after the acquisition of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio, upon information and belief, Defendant Ben-Zion Alcalay has continuously

paid Non-Party Plaintiffs the $5,000 per month every month since the Waynetowne Plaza Shopping Center in Huber Heights, Ohio acquisition indirectly so that Plaintiff Ronni Dynkin would not know that Non-Party Plaintiffs were receiving the $5,000 per month every month, since the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

105.    Defendant Ben-Zion Alcalay had no legitimate basis for causing Jacaroga, L.L.C. to cease making the $5,000 monthly payments to Plaintiff Ronni Dynkin while making the payments to Non-Party Plaintiffs, other than to punish Plaintiff Ronni Dynkin for unrelated disputes between Plaintiff Ronni Dynkin and her husband and sons with Defendant Ben-Zion Alcalay.

106.    In July 2020, Plaintiff Ronni Dynkin received a consistent monthly $5,000 check from Jacaroga, L.L.C.

107.    Thereafter, in August 2020, Plaintiff Ronni Dynkin contacted Defendant Ben-Zion Alcalay's assistant Renee Parrett to request a wire transfer in lieu of a check for the month of August 2020, as Plaintiff Ronni Dynkin needed the $5,000 for a certain personal purpose.

108.    On August 3, 2020, Plaintiff Ronni Dynkin received a federal funds wire which should have been for $5,000, but the wire was in the amount of $500,000 and it was transmitted by Defendant Olympic Property Management LLC instead of the $5,000 wire from Jacaroga, L.L.C. The wire confirmation stated that the $500,000 wire transmitted by Defendant Olympic Property Management LLC to Plaintiff Ronni Dynkin was for a "Jacaroga Distribution", and the funds originated from a Defendant Olympic Property Management LLC bank account, and Defendant Aharon Alcalay is the manager of Defendant

Olympic Property Management LLC pursuant to records in the Office of the Secretary of State of Florida.

109.   Upon information and belief, in or about August 2020, funds of Jacaroga, L.L.C. were comingled with the funds of Defendant Olympic Property Management LLC, in Defendant Olympic Property Management LLC's bank account.

110.   Plaintiff Ronni Dynkin promptly returned to Defendant Olympic Property Management LLC, $495,000 of the $500,000 wire sent by Defendant Olympic Property Management LLC to Plaintiff Ronni Dynkin.

111.   When prompted by Plaintiff Ronni Dynkin on why it was possible to send such a large transfer from Defendant Olympic Property Management LLC, the wrong company, Renee Parrett and her staff stated that they were preparing to pay taxes for the Waynetowne Plaza Shopping Center in Huber Heights, Ohio shopping center, and it was an "oversight". This wire transfer demonstrates that Defendant Ben-Zion Alcalay comingled the Jacaroga, L.L.C. monies with Defendant Olympic Property Management LLC's monies.

112.   Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, and Defendant David Alcalay have comingled the funds of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. with the funds of (a) Triple A Products, LLC, (b) BZA Family Holdings, LLC, (c) Four Tigers LLC, (d) Four ABA LLC, (e) Better Ingredients LLC, (f) Bears Management Group, LLC, (g) Great Lakes Milling, L.L.C., (h) BZA Investments, LLC, (i) Silver Bears Real Estate LLC, (j) Silver Bears Management LLC, (k) B&B Northlake Holding, LLC, (l) BZ Orlando, Inc., (m) New England Flour Corp., (n) America Aero Group LLC, (o) AAG I L.L.C., (p) Commodities Resource, L.L.C., (q) Aviation, Space & Aeronautics, LLC, (r) Financing Capital Group LLC, (s) Lucky Lindy Aviation, LLC, (t)

VAS Aero International LLC, (u) VAS Aero Global LLC, (v) Great Lakes Milling, L.L.C., and/or (w) US Flour Corp., entities owned, directly or indirectly by Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay and/or Defendant David Alcalay.

113.    Upon information and belief, Defendant Ben-Zion Alcalay failed to maintain sufficient distinctions between the corporations, limited liability companies and organizations that he operates and manages, including but not limited to (a) Triple A Products, LLC, (b) BZA Family Holdings, LLC, (c) Four Tigers LLC, (d) Four ABA LLC, (e) Better Ingredients LLC, (f) Bears Management Group, LLC, (g) Great Lakes Milling, L.L.C., (h) BZA Investments, LLC, (i) Silver Bears Real Estate LLC, (j) Silver Bears Management LLC, (k) B&B Northlake Holding, LLC, (l) BZ Orlando, Inc., (m) New England Flour Corp., (n) America Aero Group LLC, (o) AAG I L.L.C., (p) Commodities Resource, L.L.C., (q) Aviation, Space & Aeronautics, LLC, (r) Financing Capital Group LLC, (s) Lucky Lindy Aviation, LLC, (t) VAS Aero International LLC, (u) VAS Aero Global LLC, (v) Great Lakes Milling, L.L.C., and/or (w) US Flour Corp. and that Defendant Olympic Property Management LLC is a critical part and spoke in the wheel of Defendant Ben-Zion Alcalay shell games and racketeering activity.

114.    It appears that Defendant Ben-Zion Alcalay kept funds to pay the real estate taxes of Jacaroga, L.L.C. in the bank account of Defendant Olympic Property Management LLC.

115.    Defendant Ben-Zion Alcalay continued to pay monthly payments to all of the members of Jacaroga, L.L.C. until February 2022, where, in retribution for unrelated litigation against Plaintiff Ronni Dynkin's sons, and in an attempt to extort an unjust

settlement in that litigation, Defendant Ben-Zion Alcalay cut-off all payments to Plaintiff Ronni Dynkin.

116.    Since Febraury 2022, Defendant Ben-Zion Alcalay has not paid any monies from Jacaroga, L.L.C. to Plaintiff Ronni Dynkin, as he continues, upon information and belief, to fund other members of Jacaroga, L.L.C., including, but not limited to his estranged wife non-party Carol Alcalay, potentially using alternative methods to obscure his transfers, but which will be discovered in his litigation, and that such actions by Defendant Ben-Zion Alcalay will warrant severe punitive damages.

117.    Upon information and belief, Defendant Ben-Zion Alcalay is deliberately disguising payments to non-party Carol Alcalay and other remaining members of Jacaroga, L.L.C. by paying such members from other entities and/or sources, so that the payments to them would be untraceable by Plaintiff Ronni Dynkin.

118.    Upon information and belief, Defendant Ben-Zion Alcalay is intentionally directing Jacaroga, L.L.C. funds for improper purposes to establish a pretext for eliminating monthly $5,000 payments to Plaintiff Ronni Dynkin.

### The Conspiracy

119.    Defendant Ben-Zion Alcalay, in collaboration with his brothers Defendants Aharon Alcalay and David Alcalay, operate many businesses and maintain a signficant real estate portfolio.

120.    Upon information and belief, Defendant Ben-Zion Alcalay also leverages a vast network of companies designed to shield him from exposure and liability, but he does not maintain proper corporate formalities, nor does he properly capitalize these companies, nor does he distinguish them in the marketplace.

121.     The Waynetowne Plaza Shopping Center in Huber Heights, Ohio, which is owned by Jacaroga, L.L.C. is listed on the website of Silver Bears Real Estate, upon information and belief, owned by Defendant Silver Bears Real Estate LLC and/or Defendant Silver Bears Management LLC at www.bearsreg.com, which is deliberately confusing in the marketplace, and continues Defendant Ben-Zion Alcalay's campaign to wrongfully and unethically benefit from Jacaroga, L.L.C. and use its assets for his personal benefit without any authorization.

122.     The website of Silver Bears Real Estate at www.bearsreg.com states that the Waynetowne Plaza Shopping Center in Huber Heights, Ohio is one of Silver Bears Real Estate's properties, which is false.

123.     Defendant Ben-Zion Alcalay's comingling of assets including the assets of Jacaroga, L.L.C. with his other entities, and deliberate lack of maintenance of corporate formalities, is epitomized by the transfer of $500,000 to Plaintiff Ronni Dynkin from Defendant Olympic Property Management LLC instead of $5,000, which was the proper amount to transmit by wire to  Plaintiff Ronni Dynkin  from Jacaroga, L.L.C.

124.     Upon information and belief, Ben-Zion Alcalay regularly comingles funds and used and uses Jacaroga, L.L.C. funds for personal purposes, grossly exceeding his authorization as Manager of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C. and as President of Defendant Benhad Manager Inc. to enrich himself personally, and helping to build his personal real estate empire, without any compensation of consideration paid to the members of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C.

125.    Defendant Ben-Zion Alcalay has, on multiple occasions, refused to provide full access to the books of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C., although duly demanded by Plaintiffs.

126.    Upon information and belief, Ben-Zion Alcalay does not perform any of these wrongful acts directly, but rather directs his staff, including Renee Parrett to perform these operations, despite the fact that they know they are committing wrongful acts against Plaintiffs and against Non-Party Plaintiffs.

**FIRST CLAIM FOR RELIEF
FOR AN ACCOUNTING OF JACAROGA, L.L.C., BENHAD, L.L.C.
AND HADASI, L.L.C.**

127.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "126" of this complaint, with the same force and effect as if more fully set forth at length herein.

128.    Plaintiffs and Defendant Ben-Zion Alcalay have and had a confidential or fiduciary relationship.

129.    Plaintiffs and Defendant Benhad Manager Inc. have and had a confidential or fiduciary relationship.

130.    Defendant Ben-Zion Alcalay was entrusted with a duty to account for money or property owned by Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C.

131.    Defendant Benhad Manager Inc. was entrusted with a duty to account for money or property owned by Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C.

132.    No adequate legal remedy exists.

133.    By reason of the foregoing, Plaintiffs demand judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. for an accounting of assets, liabilities,

income, expenses, receipts and disbursements of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C., plus attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

## SECOND CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY

134.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "133" of this complaint, with the same force and effect as if more fully set forth at length herein.

135.    Plaintiffs and Defendant Ben-Zion Alcalay have and had a fiduciary relationship.

136.    Defendant Ben-Zion Alcalay engaged in misconduct consisting of self-dealing and/or personal interest conflicts.

137.    Defendant Ben-Zion Alcalay, individually, as manager of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., and as President of Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. owed a duty of loyalty to Plaintiffs.

138.    Defendant Ben-Zion Alcalay, individually, as manager of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., and as President of Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. owed a duty of care to Plaintiffs.

139.    Defendant Ben-Zion Alcalay, individually, as manager of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., and as President of Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. breached his duty

of loyalty, duty of care and fiduciary duties owed to Plaintiffs by wrongfully withholding payments from Jacaroga, L.L.C. to Plaintiff Ronni Dynkin.

140.    Defendant Ben-Zion Alcalay, individually, as manager of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., and as President of Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. breached his duty of loyalty, duty of care and fiduciary duties owed to Plaintiffs by undercapitalizing the Jacaroga, L.L.C. to justify his malicious withholding of payments due to Plaintiff Ronni Dynkin.

141.    Defendant Ben-Zion Alcalay, individually, as manager of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., and as President of Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. breached his duty of loyalty, duty of care and fiduciary duties owed to Plaintiffs by misusing the assets of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. including Jacaroga, L.L.C.'s ownership of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

142.    Defendant Ben-Zion Alcalay, individually, as manager of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., and as President of Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. breached his duty of loyalty, duty of care and fiduciary duties owed to Plaintiffs by implying to the world that the Waynetowne Plaza Shopping Center in Huber Heights, Ohio is owned by Defendant Silver Bears Management LLC and/or Defendant Silver Bears Real Estate LLC.

143.    Defendant Ben-Zion Alcalay acted contrary to the interests of Plaintiffs.

144.    Defendant Ben-Zion Alcalay's misconduct directly caused harm to Plaintiffs.

145.     Defendant Ben-Zion Alcalay breached his duty of loyalty, duty of care and fiduciary duties owed to Plaintiffs.

146.     Plaintiffs suffered injuries as a result of the misconduct by Defendant Ben-Zion Alcalay.

147.     Plaintiffs and Defendant Benhad Manager Inc. have and had a fiduciary relationship.

148.     Defendant Benhad Manager Inc. engaged in misconduct consisting of self-dealing and/or personal interest conflicts.

149.     Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. owed a duty of loyalty to Plaintiffs.

150.     Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. owed a duty of care to Plaintiffs.

151.     Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. breached its duty of loyalty, duty of care and fiduciary duties owed to Plaintiffs by wrongfully withholding payments from Jacaroga, L.L.C. to Plaintiff Ronni Dynkin.

152.     Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. breached its duty of loyalty, duty of care and fiduciary duties owed to Plaintiffs by undercapitalizing the Jacaroga, L.L.C. to justify its malicious withholding of payments due to Plaintiff Ronni Dynkin.

153.     Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. breached its duty of loyalty, duty of care and fiduciary duties owed to Plaintiffs by misusing the assets of Jacaroga, L.L.C., Benhad, L.L.C. and

Hadasi, L.L.C. including Jacaroga, L.L.C.'s ownership of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

154.    Defendant Benhad Manager Inc., the managing member of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. breached its duty of loyalty, duty of care and fiduciary duties owed to Plaintiffs by implying to the world that the Waynetowne Plaza Shopping Center in Huber Heights, Ohio is owned by Defendant Silver Bears Management LLC and/or Defendant Silver Bears Real Estate LLC.

155.    Defendant Benhad Manager Inc. acted contrary to the interests of Plaintiffs.

156.    Defendant Benhad Manager Inc.'s misconduct directly caused harm to Plaintiffs.

157.    Defendant Benhad Manager Inc. breached its duty of loyalty, duty of care and fiduciary duties owed to Plaintiffs.

158.    Plaintiffs suffered injuries as a result of the misconduct by Defendant Benhad Manager Inc.

159.    As a result of Defendant Ben-Zion Alcalay's actions, Plaintiff Ronni Dynkin suffered significant harms, including but not limited to diminished income from Jacaroga, L.L.C., diminution in value of Plaintiff Ronni Dynkin's ownership interests in Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C. and lost economic opportunities.

160.    Defendant Ben-Zion Alcalay should be required to disgorge any and all benefits, economic and non-economic, that he received from Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C. including but not limited to any monies and membership interests that Defendant Ben-Zion Alcalay, directly and indirectly improperly received from Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C.

161.    As a result of Defendant Benhad Manager Inc.'s actions, Plaintiff Ronni Dynkin suffered significant harms, including but not limited to diminished income from Jacaroga, L.L.C., diminution in value of Plaintiff Ronni Dynkin's ownership interests in Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C. and lost economic opportunities.

162.    Defendant Benhad Manager Inc. should be required to disgorge any and all benefits, economic and non-economic, that he received from Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C. including but not limited to any monies and membership interests that Defendant Benhad Manager Inc., directly and indirectly improperly received from Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C.

163.    Defendant Ben-Zion Alcalay's misconduct evidences a high degree of moral culpability as to warrant punitive damages.

164.    Defendant Benhad Manager Inc.'s misconduct evidences a high degree of moral culpability as to warrant punitive damages.

165.    By reason of the foregoing, Plaintiffs Ronni Dynkin demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

## THIRD CLAIM FOR RELIEF
## AIDING AND ABETTING
## BREACH OF FIDUCIARY DUTY

166.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "165" of this complaint, with the same force and effect as if more fully set forth at length herein.

167.    Defendant Aharon Alcalay and Defendant David Alcalay work with Defendant Ben-Zion Alcalay in several of their businesses.

168.    Upon information and belief, Defendant Aharon Alcalay and Defendant David Alcalay were direct and indirect recipients of funds from Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C., directed to them by Defendant Ben-Zion Alcalay.

169.    Upon information and belief, Defendant Aharon Alcalay and Defendant David Alcalay used funds which originated from Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C. to finance Defendant Ben-Zion Alcalay's other work or projects.

170.    Upon information and belief, Defendant David Alcalay received monies from Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C., which payments were not approved by Plaintiffs and was a conflict of interest by Defendant Ben-Zion Alcalay to pay monies from Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. to Defendant David Alcalay.

171.    Upon information and belief, Defendant Aharon Alcalay and Defendant David Alcalay aided and abetted Defendant Ben-Zion Alcalay in breaching his fiduciary duties to Plaintiffs.

172.     Upon information and belief, Defendant Aharon Alcalay and Defendant David Alcalay were direct and indirect recipients of funds from Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C., directed to them by Defendant Benhad Manager Inc.

173.     Upon information and belief, Defendant Aharon Alcalay and Defendant David Alcalay used funds which originated from Jacaroga, L.L.C., Benhad, L.L.C., and Hadasi, L.L.C. to finance Defendant Benhad Manager Inc.'s other work or projects.

174.     Upon information and belief, Defendant David Alcalay received monies from Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C., which payments were not approved by Plaintiffs and was a conflict of interest by Defendant Benhad Manager Inc. to pay monies from Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. to Defendant David Alcalay.

175.     Upon information and belief, Defendant Aharon Alcalay and Defendant David Alcalay aided and abetted Defendant Benhad Manager Inc. in breaching his fiduciary duties to Plaintiffs.

176.     By reason of the foregoing, Plaintiffs demands judgment for Aiding and Abetting Breach of Fiduciary Duty against Defendant Ben-Zion Alcalay, Defendant Benhad Manager Inc., Defendant Aharon Alcalay and Defendant David Alcalay work with Defendant Ben-Zion Alcalay (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

## FOURTH CLAIM FOR RELIEF
## FOR FRAUDULENT INDUCEMENT

177.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "176" of this complaint, with the same force and effect as if more fully set forth at length herein.

178.    Defendant Ben-Zion Alcalay represented and promised to Plaintiff Ronni Dynkin that by retaining her membership interests in Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. along with the acquisition of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio by Jacaroga, L.L.C., Defendant Ben-Zion Alcalay guaranteed payments of at least $5,000 per month from Jacaroga, L.L.C. to Plaintiff Ronni Dynkin for as long as Jacaroga, L.L.C. owned the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property.

179.    Defendant Ben-Zion Alcalay represented and promised to Plaintiff Gail Grauman that by selling her membership interests in Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. in approximately August 2019, that Plaintiff Gail Grauman would receive 22.5% of the cash that Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. had in its bank accounts as of August 16, 2019.

180.    Based on the promises made by Defendant Ben-Zion Alcalay to Plaintiff Ronni Dynkin, Plaintiff Ronni Dynkin did not decide to sell her membership interests in Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. to any third party or to Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C.

181.    Based on the promises made by Defendant Ben-Zion Alcalay to Plaintiff Gail Grauman, Plaintiff Gail Grauman decided to sell her membership interests in Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C.

182.    Plaintiff Gail Grauman never received 22.5% of the cash that Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. had in its bank accounts as of August 16, 2019.

183.    Defendant Ben-Zion Alcalay and Plaintiff Ronni Dynkin had a special or privity-like relationship, whereby Defendant Ben-Zion Alcalay was required to impart correct information to Plaintiff Ronni Dynkin.

184.    Defendant Ben-Zion Alcalay and Plaintiff Gail Grauman had a special or privity-like relationship, whereby Defendant Ben-Zion Alcalay was required to impart correct information to Plaintiff Gail Grauman.

185.    Defendant Ben-Zion Alcalay did not impart correct information to Plaintiff Ronni Dynkin.

186.    Defendant Ben-Zion Alcalay did not impart correct information to Plaintiff Gail Grauman.

187.    The information that Defendant Ben-Zion Alcalay represented to Plaintiff Ronni Dynkin was incorrect.

188.    The information that Defendant Ben-Zion Alcalay represented to Plaintiff Gail Grauman was incorrect.

189.    Plaintiff Ronni Dynkin reasonably relied upon the information provided to her by Defendant Ben-Zion Alcalay.

190.    Plaintiff Gail Grauman reasonably relied upon the information provided to her by Defendant Ben-Zion Alcalay.

191.    Plaintiff Ronni Dynkin suffered damages and injuries as a result of the fraudulent inducement of her by Defendant Ben-Zion Alcalay.

192.    Plaintiff Gail Grauman suffered damages and injuries as a result of the fraudulent inducement of her by Defendant Ben-Zion Alcalay.

193.    By reason of the foregoing, Plaintiff Ronni Dynkin demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

194.    By reason of the foregoing, Plaintiffs demand judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

## FIFTH CLAIM FOR RELIEF
## FOR RECISSION
### (Plaintiff Ronni Dynkin)

195.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "194" of this complaint, with the same force and effect as if more fully set forth at length herein.

196.    Plaintiff Ronni Dynkin seeks rescission of her authorization to permit Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. to enter into a contract of

sale for the purchase of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property based on the fraud in the inducement by Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. to seek Plaintiff Ronni Dynkin's permission and consent for Jacaroga, L.L.C. to acquire the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

197.   There was no consideration paid to Plaintiff Ronni Dynkin by Jacaroga, L.L.C., Defendant Ben-Zion Alcalay or Defendant Benhad Manager Inc. for Plaintiff Ronni Dynkin to consent to the purchase of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio by Jacaroga, L.L.C.

198.   Defendant Ben-Zion Alcalay or Defendant Benhad Manager Inc. breached the terms of the agreement by and between Plaintiff Ronni Dynkin on the one hand, and Defendant Ben-Zion Alcalay or Defendant Benhad Manager Inc. on the other hand wherein the Waynetowne Plaza Shopping Center in Huber Heights, Ohio was acquired by Jacaroga, L.L.C.

199.   Any option agreement or agreement of any kind entered into by Plaintiff Ronni Dynkin on the one hand, and Jacaroga, L.L.C., Defendant Ben-Zion Alcalay or Defendant Benhad Manager Inc. on the other hand should be rescinded and void, based on the fraud in the inducement by Defendant Ben-Zion Alcalay or Defendant Benhad Manager Inc.

200.   Any agreement of any kind entered into by Plaintiff Ronni Dynkin on the one hand, and Jacaroga, L.L.C., Defendant Ben-Zion Alcalay or Defendant Benhad Manager Inc. permitting to obtain any ownership interests in the Waynetowne Plaza Shopping Center in Huber Heights, Ohio or the Waynetowne Plaza Shopping Center in Huber Heights, Ohio real property should be rescinded and void.

201.    By reason of the foregoing, Plaintiff Ronni Dynkin demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. for rescission of any and all agreements with regard to the Waynetowne Plaza Shopping Center in Huber Heights, Ohio, plus attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

**SIXTH CLAIM FOR RELIEF**
**FOR BREACH OF CONTRACT**
**(Plaintiff Ronni Dynkin)**

202.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "201" of this complaint, with the same force and effect as if more fully set forth at length herein.

203.    In approximately June 2019, Plaintiff Ronni Dynkin and Defendant Ben-Zion Alcalay entered into a valid, enforceable, and binding contract for the transfer of certain membership interests Jacaroga, L.L.C. from Plaintiff Ronni Dynkin to Defendant Ben-Zion Alcalay in return for Defendant Ben-Zion Alcalay guaranteeing monthly payments from Jacaroga, L.L.C. to Plaintiff Ronni Dynkin in monthly sums of no less than $5,000 per month for as long as Plaintiff Ronni Dynkin was a member of Jacaroga, L.L.C., and Jacaroga, L.L.C. owned the Waynetowne Plaza Shopping Center in Huber Heights, Ohio or any replacement thereof.

204.    There was the existence of a contract by and between Plaintiff Ronni Dynkin and Defendant Ben-Zion Alcalay.

205.    Plaintiff Ronni Dynkin performed all of her obligations pursuant to the contract with Defendant Ben-Zion Alcalay.

206.    Defendant Ben-Zion Alcalay breached his obligations and failed to perform his obligations of the contract with Plaintiff Ronni Dynkin.

207.    Plaintiff Ronni Dynkin suffered damages as a result of Defendant Ben-Zion Alcalay's breach of his obligations and failure to perform his obligations of the contract with Plaintiff Ronni Dynkin.

208.    By reason of the foregoing, Plaintiff Ronni Dynkin demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

## SEVENTH CLAIM FOR RELIEF
## FOR BREACH OF CONTRACT
### (Plaintiff Gail Grauman)

209.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "208" of this complaint, with the same force and effect as if more fully set forth at length herein.

210.    On or about August 19, 2019, Plaintiff Gail Grauman entered into an agreement with Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. for Plaintiff Gail Grauman to sell her membership interests in Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. for a payment of $1,305,000 via federal funds wire, plus 22.5% of the cash in bank accounts of Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. as of August 16, 2019.

211.    Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. failed to cause the 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. as of August 16, 2019 to be paid to Plaintiff Gail Grauman.

212.    There was the existence of a contract by and between Plaintiff Gail Grauman and Defendant Ben-Zion Alcalay.

213.    Plaintiff Gail Grauman performed all of her obligations pursuant to the contract with Defendant Ben-Zion Alcalay.

214.    Defendant Ben-Zion Alcalay breached his obligations and failed to perform his obligations of the contract with Plaintiff Gail Grauman.

215.    Plaintiff Gail Grauman suffered damages as a result of Defendant Ben-Zion Alcalay's breach of his obligations and failure to perform his obligations of the contract with Plaintiff Ronni Dynkin.

216.    By reason of the foregoing, Plaintiff Gail Grauman demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but greater than the minimum jurisdictional limit for a diversity jurisdiction action, (ii) in an amount to be determined at trial in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

<u>**EIGHTH CLAIM FOR RELIEF
FOR CONVERSION**</u>

217.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "216" of this complaint, with the same force and effect as if more fully set forth at length herein.

218.    Plaintiff Ronni Dynkin and Plaintiff Gail Grauman each provided a loan at the demand of Defendant Ben-Zion Alcalay to Jacaroga, L.L.C. in the amount of $50,000.00 derived from the proceeds of the sale of the real property located at, 5 Somerset Drive South, Great Neck, New York, the former residence of Plaintiff Ronni Dynkin and Plaintiff Gail Grauman's mother.

219. The $100,000 in loan proceeds was to be used by Defendant Ben-Zion Alcalay and repaid to Plaintiffs once Jacaroga, L.L.C. completed the acquisition of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

220. Defendant Ben-Zion Alcalay has not returned the loaned funds to Plaintiffs, although demands upon Defendant Ben-Zion Alcalay were made by Plaintiffs.

221. Upon information and belief, the loaned funds are owned by Plaintiffs, and Plaintiffs have a possessory right in the $100,000 funds.

222. Defendant Ben-Zion Alcalay has exercised dominion over the $100,000 funds in derogation of Plaintiffs' rights.

223. By reason of the foregoing, Plaintiff Ronni Dynkin and Plaintiff Gail Grauman demand judgment against Defendant Ben-Zion Alcalay (i) in an amount to be determined at trial, but greater than $100,000, (ii) plus an amount to be determined at trial in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

## NINTH CLAIM FOR RELIEF
## FOR CONSTRUCTIVE TRUST FOR PLAINTIFF RONNI DYNKIN

224. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "223" of this complaint, with the same force and effect as if more fully set forth at length herein.

225. Plaintiff Ronni Dynkin and Defendant Ben-Zion Alcalay had a confidential relationship.

226. Plaintiff Ronni Dynkin and Defendant Ben-Zion Alcalay had a fiduciary relationship.

227.    Plaintiff Ronni Dynkin agreed to roll her profits from the sale of the Queens Property to the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property, based on the promise from Defendant Ben-Zion Alcalay that Plaintiff Ronni Dynkin would be paid no less than $5,000 per month each month after the purchase of the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property by Jacaroga, L.L.C.

228.    Based on the promises made by Defendant Ben-Zion Alcalay, Plaintiff Ronni Dynkin agreed to the sale of the Queens Property by Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C.

229.    Defendant Ben-Zion Alcalay, directly and/or indirectly holds membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C.

230.    Defendant Ben-Zion Alcalay was unjustly enriched by failing to cause Defendant Benhad Manager Inc. and Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to pay to Plaintiff Ronni Dynkin the sum of $5,000 per month from approximately September 2019 in perpetuity.

231.    Defendant Ben-Zion Alcalay failed to cause Defendant Benhad Manager Inc. and Jacaroga, L.L.C. to pay to Plaintiff Ronni Dynkin the sum of $5,000 per month from approximately February 2022 and each month thereafter.

232.    By reason of the foregoing, Plaintiff Ronni Dynkin demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. for the (i) imposition of a constructive trust for the benefit of Plaintiff Ronni Dynkin (ii) damages in an amount to be determined at trial, greater than the jurisdictional minimum limit of this Court, (iii) punitive damages in an amount to be determined at trial, plus (iv) attorneys' fees, costs, expenses and disbursements expended by Plaintiff Ronni Dynkin.

## TENTH CLAIM FOR RELIEF
## FOR CONSTRUCTIVE TRUST FOR PLAINTIFF GAIL GRAUMAN

233. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "232" of this complaint, with the same force and effect as if more fully set forth at length herein.

234. Plaintiff Gail Grauman and Defendant Ben-Zion Alcalay had a confidential relationship.

235. Plaintiff Gail Grauman and Defendant Ben-Zion Alcalay had a fiduciary relationship.

236. Plaintiff Gail Grauman sold her interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. based on the promise from Defendant Ben-Zion Alcalay that Plaintiff Gail Grauman would be paid 22.5% of the cash that Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. had in its bank accounts as of August 16, 2019.

237. Based on the promises made by Defendant Ben-Zion Alcalay, Plaintiff Gail Grauman transferred her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C.

238. Defendant Ben-Zion Alcalay, directly and/or indirectly holds membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C.

239. Defendant Ben-Zion Alcalay was unjustly enriched by failing to cause Defendant Benhad Manager Inc. and Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to pay to Plaintiff Gail Grauman, the 22.5% of the cash that Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. had in its bank accounts as of August 16, 2019.

240.    By reason of the foregoing, Plaintiff Gail Grauman demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. for the (i) imposition of a constructive trust for the benefit of Plaintiff Gail Grauman (ii) damages in an amount to be determined at trial, greater than the jurisdictional minimum limit of this Court, (iii) punitive damages in an amount to be determined at trial, plus (iv) attorneys' fees, costs, expenses and disbursements expended by Plaintiff Gail Grauman.

<u>**ELEVENTH CLAIM FOR RELIEF**</u>
<u>**FOR PIERCING THE CORPORATE VEIL OF**</u>
<u>**DEFENDANT BENHAD MANAGER INC.**</u>
<u>**FOR DEFENDANT BENHAD MANAGER INC.'S BREACH OF CONTRACT AND**</u>
<u>**BREACH OF FIDUCIARY DUTIES TO PLAINTIFFS**</u>

241.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "240" of this complaint, with the same force and effect as if more fully set forth at length herein.

242.    Plaintiffs have been injured and suffered damages as a result of the malfeasance by Defendant Benhad Manager Inc.

243.    Defendant Ben-Zion Alcalay is liable to Plaintiffs for the breaches by Defendant Benhad Manager Inc. of the contract and/or agreement between Plaintiffs and Defendant Benhad Manager Inc. for Defendant Benhad Manager Inc. to act as manager of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C.

244.    Defendant Ben-Zion Alcalay is liable to Plaintiffs for the breaches by Defendant Benhad Manager Inc. of Defendant Benhad Manager Inc.'s fiduciary duties to the Plaintiffs.

245.     Upon information and belief, between April 23, 2007 and the present date, Defendant Ben-Zion Alcalay was and a principal, shareholder and/or officer of Defendant Benhad Manager Inc.

246.     Between April 23, 2007 and the present date, Defendant Ben-Zion Alcalay exercised control over the daily operations of Defendant Benhad Manager Inc.

247.     Between April 23, 2007 and the present date, Defendant Ben-Zion Alcalay was the prime mover behind Defendant Benhad Manager Inc.

248.     Defendant Ben-Zion Alcalay is not entitled to be shielded or protected from liability for the actions and breaches of the obligations of Defendant Benhad Manager Inc. to Plaintiffs.

249.     Upon information and belief, Defendant Ben-Zion Alcalay used Defendant Benhad Manager Inc. as an instrumentality to defraud Plaintiffs.

250.     The Court should impose the obligations of Defendant Benhad Manager Inc., upon Defendant Ben-Zion Alcalay with regard to the obligations of Defendant Benhad Manager Inc., to Plaintiffs, which have been breached.

251.     Defendant Ben-Zion Alcalay is liable to Plaintiffs for the breaches by Defendant Benhad Manager Inc. of the agreements between Plaintiffs and Defendant Benhad Manager Inc.

252.     Defendant Ben-Zion Alcalay is liable to Plaintiffs for the breaches by Defendant Benhad Manager Inc. of the fiduciary duties owed by Defendant Benhad Manager Inc. to Plaintiffs.

253.    By reason of the foregoing, Plaintiffs demand judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

### TWELFTH CLAIM FOR RELIEF
### FOR FRAUD AGAINST
### DEFENDANT BEN-ZION ALCALAY AND
### DEFENDANT BENHAD MANAGER INC.
### BY PLAINTIFF RONNI DYNKIN

254.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "253" of this complaint, with the same force and effect as if more fully set forth at length herein.

255.    On or about June 7, 2019, Defendant Ben-Zion Alcalay fraudulently induced Plaintiff Ronni Dynkin into agreeing to transfer her share of proceeds from the sale of the Queens Property to purchase an equal interest in the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property.

256.    On or about June 7, 2019, Defendant Ben-Zion Alcalay as President of Defendant Benhad Manager Inc. and Defendant Benhad Manager Inc., fraudulently induced Plaintiff Ronni Dynkin into agreeing to transfer her share of proceeds from the sale of the Queens Property to purchase an equal interest in the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property.

257.    On or about June 7, 2019, Defendant Benhad Manager Inc. fraudulently induced Plaintiff Ronni Dynkin into agreeing to transfer her share of proceeds from the sale

of the Queens Property to purchase an equal interest in the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property.

258.    Defendant Ben-Zion Alcalay misrepresented a material fact to Plaintiff Ronni Dynkin that if Plaintiff Ronni Dynkin agreed to transfer her share of proceeds from the sale of the Queens Property to purchase an equal interest in the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property, Defendant Ben-Zion Alcalay would guaranty that Plaintiff Ronni Dynkin would receive a minimum payment from Jacaroga, L.L.C. in the amount of $5,000 each month after Jacaroga, L.L.C. acquired the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

259.    Defendant Ben-Zion Alcalay as President of Defendant Benhad Manager Inc. and Defendant Benhad Manager Inc. misrepresented a material fact to Plaintiff Ronni Dynkin that if Plaintiff Ronni Dynkin agreed to transfer her share of proceeds from the sale of the Queens Property to purchase an equal interest in the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property, Defendant Ben-Zion Alcalay would guaranty that Plaintiff Ronni Dynkin would receive a minimum payment from Jacaroga, L.L.C. in the amount of $5,000 each month after Jacaroga, L.L.C. acquired the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

260.    Each month after Jacaroga, L.L.C. acquired the Waynetowne Plaza Shopping Center in Huber Heights, Ohio, Defendant Ben-Zion Alcalay caused Jacaroga, L.L.C. to issue payment in the amount of $5,000 each month to Plaintiff Ronni Dynkin until approximately February 1, 2022, at which time the $5,000 monthly payments ceased without any legitimate basis for such cessation of payments.

261.     Each month after Jacaroga, L.L.C. acquired the Waynetowne Plaza Shopping Center in Huber Heights, Ohio, Defendant Benhad Manager Inc. caused Jacaroga, L.L.C. to issue payment in the amount of $5,000 each month to Plaintiff Ronni Dynkin until approximately February 1, 2022, at which time the $5,000 monthly payments ceased without any legitimate basis for such cessation of payments.

262.     When Defendant Ben-Zion Alcalay represented, warranted and guaranteed to Plaintiff Ronni Dynkin that if Plaintiff Ronni Dynkin agreed to transfer her share of proceeds from the sale of the Queens Property to purchase an equal interest in the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property, Defendant Ben-Zion Alcalay would guaranty that Plaintiff Ronni Dynkin would receive a minimum payment from Jacaroga, L.L.C. in the amount of $5,000 each month after Jacaroga, L.L.C. acquired the Waynetowne Plaza Shopping Center in Huber Heights, Ohio and Defendant Ben-Zion Alcalay knew at the time of making such statement, that such statement was false.

263.     When Defendant Benhad Manager Inc. represented, warranted and guaranteed to Plaintiff Ronni Dynkin that if Plaintiff Ronni Dynkin agreed to transfer her share of proceeds from the sale of the Queens Property to purchase an equal interest in the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property, Defendant Benhad Manager Inc. and Defendant Ben-Zion Alcalay would guaranty that Plaintiff Ronni Dynkin would receive a minimum payment from Jacaroga, L.L.C. in the amount of $5,000 each month after Jacaroga, L.L.C. acquired the Waynetowne Plaza Shopping Center in Huber Heights, Ohio and Defendant Benhad Manager Inc. knew at the time of making such statement, that such statement was false.

264.    As part of a scheme to defraud Plaintiff Ronni Dynkin, Defendant Ben-Zion Alcalay knew that he would cause Jacaroga, L.L.C. to stop making the $5,000 minimum monthly payments to Plaintiff Ronni Dynkin at a point in time.

265.    As part of a scheme to defraud Plaintiff Ronni Dynkin, Defendant Benhad Manager Inc. knew that he would cause Jacaroga, L.L.C. to stop making the $5,000 minimum monthly payments to Plaintiff Ronni Dynkin at a point in time.

266.    Plaintiff Ronni Dynkin justifiably relied upon the representation, warranty and guaranty Defendant Ben-Zion Alcalay that if Plaintiff Ronni Dynkin agreed to transfer her share of proceeds from the sale of the Queens Property to purchase an equal interest in the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property, Defendant Ben-Zion Alcalay would guaranty that Plaintiff Ronni Dynkin would receive a minimum payment from Jacaroga, L.L.C. in the amount of $5,000 each month after Jacaroga, L.L.C. acquired the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

267.    Plaintiff Ronni Dynkin justifiably relied upon the representation, warranty and guaranty Defendant Benhad Manager Inc. that if Plaintiff Ronni Dynkin agreed to transfer her share of proceeds from the sale of the Queens Property to purchase an equal interest in the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property, Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. would guaranty that Plaintiff Ronni Dynkin would receive a minimum payment from Jacaroga, L.L.C. in the amount of $5,000 each month after Jacaroga, L.L.C. acquired the Waynetowne Plaza Shopping Center in Huber Heights, Ohio.

268.    As a result of Plaintiff Ronni Dynkin relying upon the representation of Defendant Ben-Zion Alcalay, Plaintiff Ronni Dynkin suffered injury and damages.

269.    As a result of Plaintiff Ronni Dynkin relying upon the representation of Defendant Benhad Manager Inc., Plaintiff Ronni Dynkin suffered injury and damages.

270.    By reason of the foregoing, Plaintiff Ronni Dynkin demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

### THIRTEENTH CLAIM FOR RELIEF
### FOR FRAUD AGAINST
### DEFENDANT BEN-ZION ALCALAY AND
### DEFENDANT BENHAD MANAGER INC.
### BY PLAINTIFF GAIL GRAUMAN

271.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "270" of this complaint, with the same force and effect as if more fully set forth at length herein.

272.    On or about August 19, 2019, Defendant Ben-Zion Alcalay fraudulently induced Plaintiff Gail Grauman into selling her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. for the price of $1,305,000 plus 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019.

273.    On or about August 19, 2019, Defendant Ben-Zion Alcalay as President of Defendant Benhad Manager Inc. and Defendant Benhad Manager Inc., fraudulently induced Plaintiff Gail Grauman into selling her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. for the

price of $1,305,000 plus 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019.

274.    On or about August 19, 2019, Defendant Benhad Manager Inc. fraudulently induced Plaintiff Gail Grauman into agreeing to transfer her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., Plaintiff Gail Grauman actually transferred her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. on or about August 19, 2019, based on the representations made to her by Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc.

275.    Defendant Ben-Zion Alcalay misrepresented a material fact to Plaintiff Gail Grauman that if Plaintiff Gail Grauman agreed to transfer her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., she would be paid the sum of $1,305,000 plus 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019.

276.    Defendant Ben-Zion Alcalay as President of Defendant Benhad Manager Inc. and Defendant Benhad Manager Inc. misrepresented a material fact to Plaintiff Gail Grauman that if Plaintiff Gail Grauman agreed to transfer her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., she would be paid the sum of $1,305,000 plus 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019.

277.    To the present date, Defendant Ben-Zion Alcalay, individually, and as President of Defendant Benhad Manager Inc. and Defendant Benhad Manager Inc. failed to pay 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi,

L.L.C. as of August 16, 2019 to Plaintiff Gail Grauman as agreed to by Defendant Ben-Zion Alcalay, individually, and as President of Defendant Benhad Manager Inc., Defendant Benhad Manager Inc., being the manager of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C.

278.    Plaintiff Gail Grauman demanded payment of the 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019 from Defendant Ben-Zion Alcalay, Defendant Benhad Manager Inc. and Jacaroga, L.L.C., and Defendant Ben-Zion Alcalay, Defendant Benhad Manager Inc. and Jacaroga, L.L.C. failed to cause the payment of 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019  to Plaintiff Gail Grauman.

279.    When Defendant Ben-Zion Alcalay represented, warranted and guaranteed to Plaintiff Gail Grauman that if Plaintiff Gail Grauman agreed to transfer her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., Plaintiff Gail Grauman would be paid the sum of $1,305,000 plus 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019, Defendant Ben-Zion Alcalay knew at the time of making such statement, that such statement was false.

280.    When Defendant Benhad Manager Inc. represented, warranted and guaranteed to Plaintiff Gail Grauman that if Plaintiff Gail Grauman agreed to transfer her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., Plaintiff Gail Grauman would be paid the sum of $1,305,000 plus 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi,

L.L.C. as of August 16, 2019, Defendant Benhad Manager Inc. knew at the time of making such statement, that such statement was false.

281. As part of a scheme to defraud Plaintiff Gail Grauman, Defendant Ben-Zion Alcalay knew that he would not cause Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to pay to Plaintiff Gail Grauman a sum equal to 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019.

282. As part of a scheme to defraud Plaintiff Gail Grauman, Defendant Benhad Manager Inc. knew that Defendant Benhad Manager Inc. would not cause Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to pay to Plaintiff Gail Grauman a sum equal to 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019.

283. Plaintiff Gail Grauman justifiably relied upon the representation, warranty and guaranty Defendant Ben-Zion Alcalay that if Plaintiff Gail Grauman agreed to transfer her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., Plaintiff Gail Grauman would be paid the sum of $1,305,000 plus 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019.

284. Plaintiff Gail Grauman justifiably relied upon the representation, warranty and guaranty Defendant Benhad Manager Inc. that if Plaintiff Gail Grauman agreed to transfer her membership interests in Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., Plaintiff Gail Grauman would be paid the sum of $1,305,000 plus 22.5% of the cash in the bank accounts of Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. as of August 16, 2019.

285. As a result of Plaintiff Gail Grauman relying upon the representations of Defendant Ben-Zion Alcalay, Plaintiff Gail Grauman suffered injury and damages.

286. As a result of Plaintiff Gail Grauman relying upon the representations of Defendant Benhad Manager Inc., Plaintiff Gail Grauman suffered injury and damages.

287. By reason of the foregoing, Plaintiff Ronni Dynkin demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

288. By reason of the foregoing, Plaintiff Gail Grauman demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

## FOURTEENTH CLAIM FOR RELIEF
## FOR UNJUST ENRICHMENT
## DEFENDANT BEN-ZION ALCALAY AND
## DEFENDANT BENHAD MANAGER INC.

289. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "288" of this complaint, with the same force and effect as if more fully set forth at length herein.

290. In the event that the Court finds that there is no contract between Plaintiffs and Defendant Ben-Zion Alcalay, then Plaintiffs claim in the alternative against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. for unjust enrichment.

291.    In the event that the Court finds that there is no contract between Plaintiffs and Defendant Benhad Manager Inc., then Plaintiffs claim in the alternative against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. for unjust enrichment.

292.    Defendant Ben-Zion Alcalay benefitted at the Plaintiffs' expense.

293.    Equity and good conscience requires restitution to be paid by Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. to Plaintiffs.

294.    By reason of the foregoing, Plaintiffs demand judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

**FIFTEENTH CLAIM FOR RELIEF**
**CONSPIRACY TO COMMIT FRAUD AGAINST**
**DEFENDANT BEN-ZION ALCALAY,**
**DEFENDANT AHARON ALCALAY, AND**
**DEFENDANT DAVID ALCALAY**

295.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "294" of this complaint, with the same force and effect as if more fully set forth at length herein.

296.    Defendant Ben-Zion Alcalay perpetrated a fraud on Plaintiffs as set forth herein.

297.    Defendant Benhad Manager Inc. perpetrated a fraud on Plaintiffs as set forth herein.

298.    Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. maintained a corrupt enterprise in which they knowingly misrepresented to Plaintiffs the income,

expenses, cash receipts, cash disbursements for Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C., as well as misrepresented to Plaintiffs facts regarding the mortgaging of the Queens Property and the sale of the Queens Property.

299.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay and Defendant David Alcalay participated in the scheme to defraud Plaintiffs.

300.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay and Defendant David Alcalay had actual or constructive knowledge of the fraud, as set forth above.

301.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay and Defendant David Alcalay committed overt acts in furtherance of the conspiracy by, *inter alia*, receiving fees and/or monies, directly and indirectly from Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. over a period of time from approximately May 16, 2007 to the present date.

302.    In reliance on Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc.'s misrepresentations and omissions, Plaintiffs were damaged in amount to be determined at trial.

303.    Upon information and belief, because Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay and Defendant David Alcalay, engaged in the conspiracy to commit fraud stated in this complaint willfully and maliciously, and with the intent to damage Plaintiffs, Plaintiffs are entitled to an award of punitive damages.

304.    By reason of the foregoing, Plaintiffs have been damaged in the sum to be determined at trial, but anticipated to be no less than $2,000,000.00, plus punitive damages in the amount of $6,000,000.00, plus, attorneys' fees, costs, expenses and disbursements.

305.    By reason of the foregoing, Plaintiffs demand judgment against Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay and Defendant David Alcalay (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

**SIXTEENTH CLAIM FOR RELIEF**
**FOR THE APPOINTMENT OF A RECEIVER**
**OF DEFENDANT BENHAD MANAGER INC. AND JACAROGA, L.L.C.**

306.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "305" of this complaint, with the same force and effect as if more fully set forth at length herein.

307.    There is a danger that funds of Defendant Benhad Manager Inc. and Jacaroga, L.L.C. will be removed from the State of New York, given the fact that Defendant Benhad Manager Inc. is not a New York entity and Jacaroga, L.L.C. no longer owns real property in the State of New York.

308.    To protect Plaintiffs, the Court should appoint a receiver of the assets and business operations of Defendant Benhad Manager Inc.

309.    By reason of the foregoing, Plaintiffs demand judgment for the appointment of a receiver for Defendant Benhad Manager Inc., plus attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

### SEVENTEENTH CLAIM FOR RELIEF
### PURSUANT TO RELIEF FOR
### CIVIL RACKETEER INFLUENCED AND
### CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1961, ET. SEQ. ("RICO")
### VIOLATION OF RICO SECTION 18 U.S.C. §1962(C)
### AGAINST ALL DEFENDANTS

310.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "309" of this complaint, with the same force and effect as if more fully set forth at length herein.

311.    The RICO statute 18 U.S.C. §1962(c) and (d), provides a civil cause of action to persons in their business or property by reason of the defendant's operation of, or conspiracy to operate, an enterprise through a pattern of racketeering acts.

312.    Plaintiffs are a "person" as defined in 18 U.S.C. §1961(3) and 1962(c).

313.    Defendants are each a "person" as defined in 18 U.S.C. §1961(3) and 1962(c).

314.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. were employed by and/or associated with an enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

315.    Defendant Ben-Zion Alcalay was and is the enterprise whose activities affect interstate commerce.

316.    Defendant Aharon Alcalay was and is the enterprise whose activities affect interstate commerce.

317.    Defendant David Alcalay was and is the enterprise whose activities affect interstate commerce.

318.    Defendant Olympic Property Management LLC was and is the enterprise whose activities affect interstate commerce.

319.    Defendant Silver Bears Management LLC was and is the enterprise whose activities affect interstate commerce.

320.    Defendant Silver Bears Real Estate LLC was and is the enterprise whose activities affect interstate commerce.

321.    Defendant Benhad Manager Inc. was and is the enterprise whose activities affect interstate commerce.

322.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. were and are members of the enterprise whose activities affect interstate commerce.

323.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. participated in the operation of the enterprise whose activities affect interstate commerce.

324.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and

Defendant Benhad Manager Inc. participated in the operation of the enterprise whose activities affect interstate commerce.

325.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. were and are employed by or associated with the enterprise.

326.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs.

327.    Pursuant to, and in furtherance of their fraudulent scheme, Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. committed multiple related acts of wire fraud, mail fraud and interference with interstate commerce.

328.    The acts of wire fraud, mail fraud and interference with interstate commerce set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

329.    The association of Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real

Estate LLC and Defendant Benhad Manager Inc. and other individuals constituted an enterprise within the meaning of 18 U.S.C. § 1961(c) (the "Enterprise"), which enterprise was engaged in, and whose activities affected, interstate and foreign commerce.

330.    The Enterprise was continuous in that it lasted for more than two years, had an ascertainable structure, and acted in ways distinct from the predicate offenses alleged by Plaintiffs.

331.    The mortgaging of, and obtaining of a mortgage on the Queens Property from UBS Real Estate Securities Inc. on or about May 16, 2007, arranged by Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc., with the assistance of and cooperation of Defendant Aharon Alcalay and Defendant David Alcalay was a predicate act under 18 U.S.C. § 1961, et.seq. where the documents required to obtain a $12,500,000 mortgage loan by Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. was transmitted via United States Mail and via wire.

332.    The mortgaging of, and obtaining of a mortgage on the Queens Property from T.D. Bank, N.A. on or about March 30, 2017, arranged by Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc., with the assistance of and cooperation of Defendant Aharon Alcalay and Defendant David Alcalay was a predicate act under 18 U.S.C. § 1961, et.seq. where the documents required to obtain a $13,000,000 mortgage loan by Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. was transmitted via United States Mail and via wire.

333.    The sale of the Queens Property from Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. on or about June 7, 2019 to Jackson 13-Lee 74 LLC, arranged by Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc., with the assistance of and cooperation of Defendant Aharon Alcalay and Defendant David Alcalay was a predicate act

under 18 U.S.C. § 1961, et.seq. where the documents required to cause Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to sell the Queens Property was transmitted via United States Mail and via wire.

334.    The Enterprise was continuous for the additional reason that the predicate acts were a regular way of conducting Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc.'s ongoing business and of conducting or participating in the ongoing Racketeering Influenced and Corrupt Organizations Act ("RICO") enterprise.

335.    Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC are each a person within the meaning of 18U.S.C. § 1961(3) and separate from the enterprise.

336.    Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc.'s scienter is established by the pattern of intentional and knowing fraudulent, material misrepresentations and omissions described above.

337.    The precise role each defendant played, is known only to defendants at this time. Such information, and evidence concerning their participation, is exclusively within the possession and knowledge of defendants

338.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC,

Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity descried above, in violation of 18 U.S.C. §1962(c).

339.    As a direct and proximate result of Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. racketeering activities and violations of 18 U.S.C. §1962(c), Plaintiffs have been injured in their business and property as fully stated in this complaint.

340.    Upon information and belief, Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. are each a culpable person, who conducts the enterprise which affects interstate commerce, through a pattern of racketeering activity, which has caused injury to Plaintiffs through the violation of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

341.    Upon information and belief, Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. have engaged in at least two (2) acts of violations of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq. in the past ten years.

342.   The acts of Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc.'s violations of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq. have been related and continuous and have evidenced a pattern of racketeering.

343.   Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. continued to defraud Plaintiffs and Non-Party Plaintiffs, the estranged wife of Defendant Ben-Zion Alcalay, after the arranging by Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc., with the assistance of and cooperation of Defendant Aharon Alcalay and Defendant David Alcalay of the mortgage loan in the amount of $12,500,000 from UBS Real Estate Securities Inc. on or about May 16, 2007, and there is a continuing threat of continuity of the violations of Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

344.   Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. engaged in mail fraud and wire fraud by using emails, cellular phones, text messages and United States mails.

345.   Plaintiffs are persons who sustained injuries to their business and property by reason of upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon

Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. violation of 18 U.S.C. §1962.

346.    Plaintiff Ronni Dynkin's injuries stem from the predicate acts of wire fraud and mail fraud, which occurred between May 16, 2007 and up to and including the present date, when Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. directly and/or indirectly continued to represent to Plaintiff Ronni Dynkin that she would be paid no less than the sum of $5,000.00 per month from the bank account of Jacaroga, L.L.C. and that she would be provided with a full accounting of all transactions by and between Jacaroga, L.L.C., Benhad, L.L.C., Hadasi, L.L.C., and third parties, including but  not limited to UBS Real Estate Securities Inc., T.D. BANK, N.A. and Jackson 13-Lee 74 LLC.

347.    Plaintiff Gail Grauman's injuries stem from the predicate acts of wire fraud and mail fraud, which occurred between May 16, 2007 and up to and including August 19, 2019, when Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. directly and/or indirectly continued to represent to Plaintiff Gail Grauman that she would be paid 22.5% of the cash in bank accounts of Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. as of August 16, 2019, and that she would be provided with a full accounting of all transactions by and between Jacaroga, L.L.C., Benhad, L.L.C., Hadasi, L.L.C., and third parties, including but  not limited to UBS Real Estate Securities Inc., T.D. BANK, N.A. and Jackson 13-Lee 74 LLC.

348.    Plaintiffs' injuries stem from the investment of racketeering income, by Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears

Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. into various real estate ventures, and unilateral breach of contracts, and continuing its racketeering enterprise.

349.    All of the allegations made in this Complaint concerning the violations of Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq. occurred within four years prior to the date of the filing of this Complaint.

350.    Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. are culpable persons, who conduct the enterprise which affects interstate commerce, through a pattern of racketeering activity, which has caused injury to Plaintiffs through the violation of the Civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, et.seq.

351.    Upon information and belief, as set forth below, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. engaged in mail fraud in violation of 18 U.S.C. §1341.

352.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. established a scheme to defraud Plaintiff, as well as Non-Party Plaintiffs.

353.    Upon information and belief, the object of the scheme to defraud purchasers was money – millions of dollars.

354.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. used the United States Mails to send mortgage payments, send and receive contracts, send and receive agreements, send and receive checks, send and receive federal income tax returns, send and receive documents to cause the sale of the Queens Property to be treated as a like-kind exchange pursuant to the Internal Revenue Code, Section 1031 with the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property.

355.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. used wire transmissions to send payments to Plaintiff Ronni Dynkin and Plaintiff Gail Grauman, send mortgage payments to lenders, send and receive contracts, send and receive agreements, filing and transmit federal income tax returns, send and receive documents to cause the sale of the Queens Property to be treated as a like-kind exchange pursuant to the Internal Revenue Code, Section 1031 with the Waynetowne Plaza Shopping Center in Huber Heights, Ohio property.

356.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. created a plan or plans to scheme and defraud Plaintiffs.

357.    Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. intended to defraud Plaintiffs.

358.    It was reasonably foreseeable that Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. knew that the United States Mails and wires would be used, and actually were used to further their scheme to defraud Plaintiffs and other individuals and entities.

359.    The mailings that were used to perpetrate the Defendants' scheme to defraud were sent via United States Mail and overnight courier services.

360.    On or about August 19, 2019, payment under the "LLM Membership Interest Purchase Agreement" by and between Plaintiff Gail Grauman and Jacaroga, L.L.C., Benhad, L.L.C., Hadasi, L.L.C. was transmitted by federal funds wire, or caused to be transmitted by federal funds wire by Defendant Ben-Zion Alcalay and/or Defendant Benhad Manager Inc. to Plaintiff Gail Grauman's bank account.

361.    On or about August 19, 2019, payment under the "LLM Membership Interest Purchase Agreement" by and between Plaintiff Gail Grauman and Jacaroga, L.L.C., Benhad, L.L.C., Hadasi, L.L.C. was transmitted by federal funds wire, or caused to be transmitted by federal funds wire by Defendant Ben-Zion Alcalay and/or Defendant Benhad Manager Inc. to a bank account for the benefit of Plaintiff Gail Grauman.

362.    Between approximately January 1, 2017 and the present date, Defendant Ben-Zion Alcalay and/or Defendant Benhad Manager Inc. transmitted by federal funds wire, or caused to be transmitted by federal funds wire monies to Plaintiff Ronni Dynkin.

363.    Between approximately January 1, 2017 and the present date, Defendant Ben-Zion Alcalay and/or Defendant Benhad Manager Inc. transmitted by federal funds wire, or caused to be transmitted by federal funds wire monies to Plaintiff Gail Grauman.

364.    Between approximately January 1, 2017 and the present date, Defendant Ben-Zion Alcalay and/or Defendant Benhad Manager Inc. transmitted by United States Mail checks and/or funds to Plaintiff Ronni Dynkin.

365.    Between approximately January 1, 2017 and the present date, Defendant Ben-Zion Alcalay and/or Defendant Benhad Manager Inc. transmitted by United States Mail checks and/or funds to Plaintiff Gail Grauman.

366.    Upon information and belief, as set forth below, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. engaged in mail fraud in violation of 18 U.S.C. §1341.

367.    Upon information and belief, as set forth below, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. engaged in wire fraud in violation of 18 U.S.C. §1343.

368. Upon information and belief, between January 1, 2010 and the present date, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. engaged in a regular practice of interfering with interstate commerce, by using emails and telephones to communicate with each other and Plaintiffs and other victims of Defendants in furtherance of their scheme to defraud.

369. Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. made decisions to cause monies and assets of Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C., to be used for unauthorized uses and non Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. purposes.

370. Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. caused monies and assets of Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C., to be used for unauthorized uses and purposes by Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C.

371. Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc.'s withholding of monies from Plaintiff Ronni Dynkin and withholding of monies from Plaintiff Gail Grauman are predicate acts under 18 U.S.C. §1961, et. seq.

372. At all times relevant to this complaint, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. constituted an enterprise within the meaning of 18 U.S.C. §1961(4) in that they were corporations and/or group of individuals associated in fact.

373. The purpose of the racketeering enterprise was to generate money for Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay and their affiliates, through the management and control of the Queens Property, Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. and taking unauthorized fees and monies, directly and indirectly from Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. to the detriment of Plaintiffs.

374. The purpose of the enterprise was implemented by the enterprise associates through various legal activities.

375. The Defendants used the enterprise to prey upon Plaintiffs.

376. The Defendants used the enterprise to prey upon Plaintiffs, as well as non-party Carol Alcalay, the estranged wife of Defendant Ben-Zion Alcalay.

377. Each of the associates of the enterprise, to wit: Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. had relationships with the other associates of the enterprise.

378.    The enterprise and its activities continued from at least May 16, 2007 to the present date.

379.    At all times relevant to this complaint, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. has been an "enterprise" within the meaning of 18 U.S.C. §1961(4).

380.    The enterprise operated in the Eastern District of New York.

381.    Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. together constituted an ongoing organization whose members and associates, including Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. functioned as a conspiracy with the common purpose of defrauding Plaintiffs and Non-Party Plaintiffs, the estranged wife of Defendant Ben-Zion Alcalay.

382.    The enterprise's associates implemented the unlawful purpose through various legal activities, but principally through Defendant Benhad Manager Inc.'s management along with Defenadnt Ben-Zion Alcalay of the Queens Property and Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C.

383.    The acts of Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver

Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc., as described in the previous paragraphs of this complaint, entitle Plaintiffs to redress under the provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961 et seq., specifically 18 U.S.C.A. § 1964(c), because: The activities engaged in by the defendants constituted a "pattern of racketeering activity," as that term is defined in 18 U.S.C.A. § 1961(5), in that the activities of the defendants constituted mail fraud, in violation of 18 U.S.C.A. § 1341, wire fraud, in violation of 18 U.S.C.A. § 1343, and financial institution fraud, in violation of 18 U.S.C.A. § 1344.

384.    Among the acts constituting a pattern of racketeering activity is the following: Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. conspired to have Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. obtain a mortgage loan on the Queens Property from UBS Real Estate Securities Inc. on or about May 16, 2007 , arranged by Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc., with the assistance of and cooperation of Defendant Aharon Alcalay and Defendant David Alcalay which is a predicate act under 18 U.S.C. § 1961, et.seq. where the documents required to obtain the $12,500,000 mortgage loan by Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. was transmitted via United States Mail and via wire.

385.    Among the acts constituting a pattern of racketeering activity is the following: Upon information and belief, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad

Manager Inc. conspired to have Jacaroga, L.L.C., Benhad, L.L.C., and/or Hadasi, L.L.C. obtain a mortgage loan on the Queens Property from T.D. Bank, N.A. on or about March 30, 2017, arranged by Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc., with the assistance of and cooperation of Defendant Aharon Alcalay and Defendant David Alcalay which is a predicate act under 18 U.S.C. § 1961, et.seq. where the documents required to obtain the $13,000,000 mortgage loan by Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. was transmitted via United States Mail and via wire.

386.    The sale of the Queens Property from Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. on or about June 7, 2019 to Jackson 13-Lee 74 LLC, arranged by Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc., with the assistance of and cooperation of Defendant Aharon Alcalay and Defendant David Alcalay was a predicate act under 18 U.S.C. § 1961, et.seq. where the documents required to cause Jacaroga, L.L.C., Benhad, L.L.C. and Hadasi, L.L.C. to sell the Queens Property was transmitted via United States Mail and via wire.

387.    The Enterprise was continuous for the additional reason that the predicate acts were a regular way of conducting Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc.'s ongoing business and of conducting or participating in the ongoing Racketeering Influenced and Corrupt Organizations Act ("RICO") enterprise.

388.    Plaintiffs have suffered injury to its person and property within the meaning of 18 U.S.C. §1964(c) by reason of Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver

Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc.'s violations of 18 U.S.C. §1962(c), in an amount to be determined at trial, but no less than the minimum jurisdictional limit of $75,000 of this court.

389.    Plaintiffs are entitled to recover treble damages and the costs of this action, including a reasonable attorney's fee, under the provisions of 18 U.S.C.A. § 1964(c).

390.    By reason of the foregoing, Plaintiffs have been damaged and demand judgment against Defendants in the sum to be determined at trial, but anticipated to be no less than $2,000,000.00, plus punitive damages in the amount of $6,000,000.00, treble damages, pre-judgment and post-judgment interest, costs, and attorneys' fees.

### EIGHTEENTH CLAIM FOR RELIEF
### FOR RELIEF PURSUANT TO RELIEF FOR CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1961, ET. SEQ. ("RICO") VIOLATION OF RICO SECTION 18 U.S.C. §1962(a)

391.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraph "1" through "390" of this Complaint, with the same force and effect as if more fully set forth at length herein.

392.    Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. is an enterprise engaged in and whose activities affect interstate commerce used and invested income, through mail fraud, wire fraud and by interfering with interstate commerce that was derived from a pattern of racketeering activity in interstate commerce.

393.    Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. is an enterprise engaged in and whose activities affect interstate commerce used and

invested income, through mail fraud, wire fraud and by interfering with interstate commerce that was derived from a pattern of racketeering activity in interstate commerce.

394.    Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. together is an enterprise engaged in and whose activities affect interstate commerce used and invested income, through mail fraud, wire fraud and by interfering with interstate commerce that was derived from a pattern of racketeering activity in interstate commerce.

395.    Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC and Defendant Silver Bears Real Estate LLC used income derived from the a pattern of racketeering activity in interstate commerce to further the enterprise and the racketeering activity.

396.    The mail fraud, wire fraud, financial institution fraud and by interfering with interstate commerce constitutes a pattern of racketeering activity pursuant to 18 U.S.C. 1961(5).

397.    As a direct and proximate result of Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc.'s racketeering activities and violations of 18 U.S.C. 1962(a), Plaintiffs have been injured in their business and property.

398.    As a direct and proximate result of Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC,

Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc.'s racketeering activities and violations of 18 U.S.C. 1962(a), Plaintiffs have been injured in their business and property.

399.    As a direct and proximate result of Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc.'s racketeering activities and violations of 18 U.S.C. 1962(a), Plaintiffs have been injured in their business and property.

400.    By reason of the foregoing, Plaintiffs have been damaged and demand judgment against Defendants in the sum to be determined at trial, but anticipated to be no less than $2,000,000.00, plus punitive damages in the amount of $6,000,000.00, treble damages, pre-judgment and post-judgment interest, costs, and attorneys' fees.

### NINETEENTH CLAIM FOR RELIEF
### RACKETEERING IN VIOLATION OF 18 U.S.C. §1962(d)
### RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT

401.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "400" of this complaint, with the same force and effect as if more fully set forth at length herein.

402.    In violation of 18 U.S.C. § 1962(d), Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. and others whose identities are known only to defendants at this time conspired to violate the provisions of 18 U.S.C. § 1962(c) in that, beginning no later than 2010 and continuing through at least approximately September 2019, they knowingly

agreed and conspired together and with others to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of racketeering activity described above. The sophisticated frauds that were perpetrated and the continuance of this scheme could not have occurred without the consent and knowing connivance of Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc., other defendants and other conspirators.

403.    As part of and in furtherance of their conspiracy, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc., agreed to and conspired in the commission of the many predicate acts described above, with the knowledge that they were in furtherance of that pattern of racketeering activity. As part of and in furtherance of their conspiracy, each of the defendants, Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay, Defendant David Alcalay, Defendant Olympic Property Management LLC, Defendant Silver Bears Management LLC, Defendant Silver Bears Real Estate LLC and Defendant Benhad Manager Inc. agreed to and did commit at least two predicate acts of racketeering. Further, each defendant's actions are attributable to the other defendants.

404.    None of defendants have withdrawn, or otherwise dissociated themselves, from the conspiracy at issue or the other conspirators.

405.    By reason of the foregoing, Plaintiffs have been damaged and demand judgment in the sum to be determined at trial, but anticipated to be no less than $2,000,000.00, plus punitive damages in the amount of $6,000,000.00, treble damages, pre-

judgment and post-judgment interest, costs, and attorneys' fees.

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

A.      On the First Claim for Relief judgment for an Accounting against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. for an accounting of assets, liabilities, income, expenses, receipts and disbursements of Jacaroga, L.L.C., Benhad, L.L.C. and/or Hadasi, L.L.C., plus attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

B.      On the Second Claim for Relief judgment for Breach of Fiduciary Duty against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

C.      On the Third Claim for Relief judgment for Aiding and Abetting Breach of Fiduciary Duty against Defendant Ben-Zion Alcalay, Defendant Benhad Manager Inc., Defendant Aharon Alcalay and Defendant David Alcalay work with Defendant Ben-Zion Alcalay (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

D.      On the Fourth Claim for Relief for judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but

anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

      E.      On the Fifth Claim for Relief judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. for rescission of any and all agreements with regard to the Waynetowne Plaza Shopping Center in Huber Heights, Ohio, plus attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

      F.      On the Sixth Claim for Relief, Plaintiff Ronni Dynkin demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

      G.      On the Seventh Claim for Relief, Plaintiff Gail Grauman demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but greater than the minimum jurisdictional limit for a diversity jurisdiction action, (ii) in an amount to be determined at trial in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

      H.      On the Eighth Claim, Plaintiff Ronni Dynkin and Plaintiff Gail Grauman demand judgment against Defendant Ben-Zion Alcalay (i) in an amount to be determined at trial, but greater than $100,000, (ii) plus an amount to be determined at trial in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

      I.      On the Ninth Claim for Relief judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. for the (i) imposition of a constructive trust for the

benefit of Plaintiff Ronni Dynkin (ii) damages in an amount to be determined at trial, greater than the jurisdictional minimum limit of this Court, (iii) punitive damages in an amount to be determined at trial, plus (iv) attorneys' fees, costs, expenses and disbursements expended by Plaintiff Ronni Dynkin; and

J.      On the Tenth Claim for Relief, Plaintiff Gail Grauman demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. for the (i) imposition of a constructive trust for the benefit of Plaintiff Gail Grauman (ii) damages in an amount to be determined at trial, greater than the jurisdictional minimum limit of this Court, (iii) punitive damages in an amount to be determined at trial, plus (iv) attorneys' fees, costs, expenses and disbursements expended by Plaintiff Gail Grauman; and

K.      On the Eleventh Claim for Relief, judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

L.      On the Twelfth Claim for Relief, Plaintiff Ronni Dynkin demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

M.      On the Thirteenth Claim for Relief judgment, Plaintiff Gail Grauman demands judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an

amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

N.      On the Fourteenth Claim for Relief judgment against Defendant Ben-Zion Alcalay and Defendant Benhad Manager Inc. (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

O.      On the Fifteenth Claim for Relief against Defendant Ben-Zion Alcalay, Defendant Aharon Alcalay and Defendant David Alcalay (i) in an amount to be determined at trial, but anticipated to be no less than $2,000,000, (ii) in an amount to be determined at trial, but anticipated to be no less than $6,000,000 in punitive damages, plus (ii) attorneys' fees, costs, expenses and disbursements expended by Plaintiffs.

P.      On the Sixteenth Claim for Relief judgment against Defendants for the appointment of a receiver for Defendant Benhad Manager Inc., plus attorneys' fees, costs, expenses and disbursements expended by Plaintiffs; and

Q.      On the Seventeenth Claim for Relief judgment against Defendants in the sum to be determined at trial, but anticipated to be no less than $2,000,000.00, plus punitive damages in the amount of $6,000,000.00, treble damages, pre-judgment and post-judgment interest, costs, and attorneys' fees; and

R.      On the Eighteenth Claim for Relief judgment against Defendants in the sum to be determined at trial, but anticipated to be no less than $2,000,000.00, plus punitive

damages in the amount of $6,000,000.00, treble damages, pre-judgment and post-judgment interest, costs, and attorneys' fees; and

S.      On the Nineteenth Claim for Relief Plaintiff judgment in the sum to be determined at trial, but anticipated to be no less than $2,000,000.00, plus punitive damages in the amount of $6,000,000.00, treble damages, pre-judgment and post-judgment interest, costs, and attorneys' fees; and

T.      Punitive damages in an amount to be determined at trial as a result of defendants' willful and intentional tortious misconduct;

U.      Treble damages under 18 U.S.C. § 1962(c) and (d);

V.      Costs, expenses, disbursements, and reasonable attorneys' fees in an amount to be awarded at trial; and

W.      Granting such other relief as may be just and proper;

Dated:      August 23, 2022
            Great Neck, New York

_____
Gary Rosen (GR-8007)
ROSEN LAW LLC
Attorneys for Plaintiffs
RONNI DYNKIN AND GAIL GRAUMAN
216 Lakeville Road
Great Neck, New York 11020
516-437-3400